85 P.3d 1054

**STATE of Arizona, Appellee,**

v.

**Tomas Shane MADRID, Appellant.**

**No. 1 CA–CR 02–0384.**

Court of Appeals of Arizona, Division 1, Department C.

March 18, 2004.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Sherman Jensen, Prescott, Attorney for Appellant.

## OPINION

HALL, Judge.

¶1 Tomas Shane Madrid was convicted following a jury trial of first degree murder, theft of a means of transportation (the victim's car), and reckless burning (of that car).[1] He appeals an order requiring him to pay restitution for travel, lodging, meal, and incidental expenses incurred by the victim's three children during the trial. For the reasons that follow, we hold the reasonable expenses associated with the children's attendance at the trial qualify as "economic losses" for which they are entitled to restitution.

## FACTS AND PROCEDURAL HISTORY

¶2 At Madrid's sentencing, the trial court originally ordered him to pay restitution in the lump-sum amount of $4,605.00. In response to the court's order, Madrid filed a "request for specification of elements of res-

---

1. We previously affirmed Madrid's convictions and sentences in a memorandum decision. *State v. Madrid*, 1 CA–CR 01–0941 (Ariz.App. Apr. 30, 2002) (mem.decision).

titution amounts" and moved for a restitution hearing. At the hearing, the state served a Statement of Victim Financial Losses (SVFL) totaling $10,588.74, and the trial court ordered Madrid's counsel to submit a post-hearing memorandum. The trial court subsequently ordered Madrid to pay the full amount requested by the state, which included $4,873.13 for the loss of the vehicle, $100.00 for the insurance deductible, $258.29 for the cost of a rental car, and $5,357.32 to reimburse the Yavapai County Attorneys' Office (YCAO) for disbursements it made to the victim's family for the costs of attending the trial. *See* Ariz.Rev.Stat. (A.R.S.) § 13–804(E) (2003) ("If a victim has received reimbursement for the victim's economic loss from an insurance company, a crime victim compensation program ... or *any other entity,* the court shall order the defendant to pay the restitution to that entity."). (Emphasis added.)

¶ 3 On appeal, defendant asserts two arguments to support his claim that the restitution awarded to the YCAO should be substantially reduced. First, he argues, citing *State v. Wideman,* 165 Ariz. 364, 798 P.2d 1373 (App.1990), that the victim's three children were not entitled to receive any restitution whatsoever because their attendance at the trial of their mother's murderer was "voluntary." [2] Second, Madrid claims that the trial court further erred by approving as part of the restitution award a per diem food allowance of $29.50 (totaling $1,504.50) that the YCAO paid the three children in lieu of actual expenses. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A) (2003).

## DISCUSSION

■ ¶ 4 In Arizona, a person convicted of a criminal offense is required to pay restitution to any victim that has suffered an economic loss. A.R.S. § 13–603(C) (2003). As defined in A.R.S. § 13–105(14) (2003), "economic loss" encompasses:

**2.** The trial commenced August 15, 2001 and the jury returned its guilty verdicts on August 30, 2001. One of the victim's three children testified during the trial. Madrid concedes that he is

[A]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

The scope of restitution is further delineated by A.R.S. § 13–804(B) (2003), which requires consideration of "all losses caused by the criminal offense or offenses for which the defendant has been convicted." In the event of the victim's death, the convicted person must make restitution to the victim's immediate family. § 13–603(C); *see also* Ariz. Const. art. 2, § 2.1(C) (" 'Victim' means a person against whom the criminal offense has been committed or, if the person is killed or incapacitated, the person's spouse, child, or other lawful representative.").

■ ¶ 5 The trial court determines the amount of the economic loss, § 13–603(C), and, in so doing, has substantial discretion according to the facts of the case. *State v. Ellis,* 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App.1992) (noting that the trial court has "wide discretion" in setting restitution). We will uphold a restitution award if it bears a reasonable relationship to the victim's loss. *State v. Lindsley,* 191 Ariz. 195, 197, 953 P.2d 1248, 1250 (App.1997). A loss is recoverable as restitution if it meets three requirements: (1) the loss must be economic, (2) the loss must be one that the victim would not have incurred but for the criminal conduct, and (3) the criminal conduct must directly cause the economic loss. *State v. Wilkinson,* 202 Ariz. 27, 29, ¶ 7, 39 P.3d 1131, 1133 (2002). If the third requirement is lacking, *i.e.,* if the loss does not flow directly from the defendant's criminal activity, then the loss is considered a non-recoverable, consequential damage. A loss flows directly from a defendant's criminal activity if it results "without the intervention of additional causative factors." *Id.*

liable for that portion of the restitution award reasonably related to that child's attendance as a witness.

¶ 6 Madrid claims that the costs incurred by the victim's children in attending the trial are consequential losses that do not qualify for restitution. In support of this argument, he relies on *Wideman,* which held that the trial court erred in awarding restitution for travel expenses incurred by the murder victim's family to attend court hearings because such expenses did not "flow" directly from Wideman's crime. 165 Ariz. at 369, 798 P.2d at 1378. Instead, the court characterized the expenses as consequential losses because they resulted from the family members' "desire" to attend the court hearings: "We sympathize with the victim's family's desire to attend these hearings, but find this was a matter of choice and not an economic loss caused by defendant's crime." *Id.*[3] We agree with Madrid that *Wideman* is directly on point; however, we decline to follow its holding on this particular issue.

¶ 7 We begin by noting that *Wideman* predated by several months the passage of Article 2, Section 2.1 of the Arizona Constitution, effective November 26, 1990, commonly referred to as the Victims' Bill of Rights, which conferred constitutional status on victims' rights, including the rights to attend court proceedings and receive prompt restitution.[4] In 1991, the legislature, in furtherance of the Victims' Bill of Rights, enacted the Victims' Rights Implementation Act, 1991 Ariz. Sess. Laws, ch. 229, § 7; A.R.S. §§ 13–4401 to –4437 (Supp.2003), which enumerated various victims' rights and included a statement of legislative intent emphasizing that the constitutional rights of "innocent persons [who] suffer economic loss" should be fully protected. 1991 Ariz. Sess. Laws, ch. 229, § 2; *see also* A.R.S. § 13–4418 (2003) ("This chapter shall be liberally construed to preserve and protect the rights to which crime victims are entitled."); *State ex rel. Hance v. Ariz. Bd. of Pardons and Paroles,* 178 Ariz. 591, 596, 875 P.2d 824, 829 (App.1993) (recog-

nizing the Victims' Bill of Rights and its implementing legislation give crime victims affirmative rights). Given the constitutional status now accorded a victim's right to attend all court proceedings, *Wideman's* description of the murder victim's family's attendance at court hearings as simply a matter of "choice" or "desire" is outdated.

¶ 8 More importantly, as explained by *Lindsley, Wideman's* basic rationale, that the travel expenses were an indirect loss because the victim's family was not required to attend any of the hearings, is flawed. One of the issues addressed in *Lindsley* was whether wages lost by a victim due to voluntary attendance at trial were recoverable as "lost earnings." In holding the lost wages flowed directly from the crime, we commented:

> The fact that the victim was in court at all was a direct result of defendant's crime. She did not 'choose' to attend the hearings as a disinterested bystander might, but because she was the victim of defendant's actions and, thus, unavoidably entwined in the criminal proceedings. But for defendant's criminal actions, the victim certainly would not have been present at the proceedings. It is a direct result of a crime that the victim attends the hearings and thus suffers wage loss. We believe it makes no difference whether the victim attended pursuant to subpoena or not.

191 Ariz. at 199, 953 P.2d at 1252.

¶ 9 *Lindsley* and *Wideman* are irreconcilable. The characterization of a victim's attendance at court proceedings as either a direct or indirect result of the defendant's crime does not depend on whether the victim is seeking recovery for travel expenses in contrast to lost wages. Rather, the determinative question is whether a victim's exercise of the constitutionally guaranteed right to

---

**3.** Conversely, *Wideman* upheld the trial court's award of restitution for the amounts expended for mental health counseling for the victim's family, reasoning that these expenses were "directly attributable" to the victim's death.

**4.** "To preserve and protect victims' rights to justice and due process, a victim of crime has a right:

   . . . .

   3. To be present at and, upon request, to be informed of all criminal proceedings where the defendant has the right to be present.

   . . . .

   8. To receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury."
Ariz. Const. art. 2, § 2.1(A).

attend criminal proceedings is an "additional causative factor" rendering travel expenses consequential losses. *See Wilkinson,* 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133.

¶ 10 We adopt *Lindsley's* analysis and apply it in the context of travel expenses. Clearly, the necessity for Madrid's trial was entirely a direct consequence of his act of murder. At that point in time, the die was cast and the children were irrevocably "entwined in the criminal proceedings," 191 Ariz. at 199, 953 P.2d at 1252, including the trial, without the occurrence of any additional causative event. Accordingly, we conclude that the travel expenses relating to the children's voluntary attendance at Madrid's trial constitute an economic loss for which they are entitled to restitution.

¶ 11 We further note that our holding is supported by other post-*Wideman* cases that have upheld awards of restitution to victim's family members. For example, in *State v. Spears,* 184 Ariz. 277, 292, 908 P.2d 1062, 1077 (1996), our supreme court upheld an order requiring a defendant to pay travel expenses and probate attorney's fees incurred by the victim's family during an emergency trip to Arizona following her murder, concluding that such expenses were "proper restitutionary items." *See also In re Ryan A.,* 202 Ariz. 19, 26–27, ¶¶ 29–32, 39 P.3d 543, 549–50 (App.2002) (upholding juvenile court's order requiring juvenile to pay restitution to minor victim's parents for time missed from employment to voluntarily attend criminal proceedings); *In re Erika V.,* 194 Ariz. 399, 401, ¶ 7, 983 P.2d 768, 770 (App.1999) (affirming juvenile court's order requiring juvenile to pay restitution to minor victim's parents for income lost while accompanying victim to criminal proceedings, reasoning the parents were not mere volunteers and had a constitutional right to attend the hearings).

■ ¶ 12 Madrid also objects to the inclusion in the restitution award of the per diem allowance advanced to the three victims. He argues, as he did in the trial court, that §§ 13–603(C) and 13–804 only authorize restitution for actual economic losses and that

the per diem allowance is simply an "administrative convenience." The trial court disagreed and found "the payment of a 'per diem' set amount for food ... to be reasonable."

¶ 13 It is undisputed that the YCAO actually did advance the victim's three children the amount of $1,504.50 for food expenses related to their attendance at the trial. Further, the trial court found that the per diem allowance of $29.50 was reasonable and Madrid does not contend otherwise. Under these circumstances, the trial court's finding was well within its discretion. See *supra* ¶ 5.

¶ 14 We note, however, that the restitution order must be modified to subtract $57.36 in telephone charges that are not reflected in the SVFL.[5]

## CONCLUSION

¶ 15 The concept of "economic loss" as defined in § 13–105(14) covers reasonable travel-related expenses incurred by a victim who voluntarily attends the trial. Further, an entity that reimburses the victim for a portion of those expenses by payment of a reasonable per diem food allowance suffers a corresponding economic loss that is not limited to the victim's actual meal expenses. Therefore, we affirm the restitution order as modified.

CONCURRING: CECIL B. PATTERSON, Presiding Judge and JEFFERSON L. LANKFORD, Judge.

---

5. Madrid correctly points out that the telephone charges of one of the victim's children as docu-

mented in the SVFL total $79.36, not $136.72.