IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,          )
                               )        2 CA-CR 2002-0251-PR
                  Respondent,  )        DEPARTMENT B
                               )
            v.                 )        O P I N I O N
                               )
CLAYTON M. GUILLIAMS,          )
                               )
                  Petitioner.  )
                               )
_____)

PETITION FOR REVIEW FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CR-2000027028

Honorable Stephen F. McCarville, Judge

REVIEW GRANTED; RELIEF GRANTED IN PART; REMANDED

Robert Carter Olson, Pinal County Attorney
  By Robert C. Brown                                              Florence
                                                     Attorneys for Respondent

Michael F. Beers, Pinal County Public Defender
  By Bret H. Huggins                                             Florence
                                                     Attorneys for Petitioner

E S P I N O S A, Chief Judge.

¶1        Petitioner Clayton Guilliams pled guilty to attempted escape in the second degree. The trial court suspended imposition of sentence, placed Guilliams on three years' probation, and over his objection, ordered him to pay restitution to the Arizona Department of Corrections (ADOC) in the amount of $47,626.55. Guilliams challenged the restitution order in a petition for post-conviction relief filed pursuant to Rule 32, Ariz. R. Crim. P., 17 A.R.S. This petition for review follows the trial court's summary denial of relief, which we review for abuse of discretion. *State v. Watton*, 164 Ariz. 323, 793 P.2d 80 (1990). Finding some merit to a portion of Guilliams's restitution argument, we conclude the trial court abused its discretion in summarily rejecting his claims, and remand for further findings regarding the restitution order.

**Background**

¶2        The following facts, drawn from the presentence report, are uncontroverted. While employed by ADOC as a maintenance worker in Florence, Guilliams became acquainted with ADOC inmate Steven Hummert and accepted his offer to help him escape. On September 29, 2000, Hummert concealed himself inside a large air conditioner box, which several inmates loaded onto a truck. Guilliams drove the truck off the prison grounds to a predetermined location in Mesa, where he left the vehicle unattended. When he returned fifteen minutes later, Hummert was gone, and an envelope containing an agreed upon $700 cash had been left with the truck. Guilliams drove the truck back to the prison, where he was immediately questioned. He initially denied participating in Hummert's escape but ultimately admitted his involvement. Hummert was apprehended nearly two months later in Oregon.

2

¶3 Pursuant to the plea agreement, Guilliams was convicted of attempted escape, apparently under an accomplice liability theory for the act of assisting Hummert to escape.[1] The plea agreement provided that "the amount of restitution shall be fixed by the Court at the time of sentencing, and shall not exceed the amount of $1,000,000.00." The presentence report suggested that the court order Guilliams to pay $15,147 to the "victim," ADOC. At the sentencing hearing, the trial court suspended the imposition of sentence and placed Guilliams on probation but did not order him to pay restitution at the time, nor did the court impose a fine of any kind. In its sentencing minute entry, the court stated that the restitution amount was to be determined at a later date.

¶4 Guilliams subsequently filed an objection to restitution, contending that ADOC's investigative costs in attempting to locate and recapture Hummert were not economic losses to the victim and, therefore, not compensable through restitution proceedings. Guilliams first claimed ADOC was not a "victim" as contemplated by A.R.S. § 13-603(C), one of the restitution statutes; he also claimed that investigative costs were consequential damages not subject to a restitution order. The state responded that ADOC was entitled to restitution for the "significant amounts of time and money in the efforts to recapture" Hummert.

---

[1]The transcript of the change-of-plea hearing has not been provided to us, and we therefore have no record of the factual basis for Guilliams's guilty plea. The plea agreement itself cited the accomplice liability statutes, A.R.S. §§ 13-301, 13-302, and 13-303, and stated that Guilliams had committed the crime "by knowingly assisting Steven Hummert in his escape from the Arizona Department of Corrections."

**¶5**         ADOC submitted documents showing it had expended $50,827.81 in "travel expenses, apprehension costs, and costs incurred in the search and capture of inmate Steven Hummert." That figure was broken down as follows. ADOC's Criminal Investigations Bureau claimed $20,877.50, a figure that appears to have been calculated by approximating the number of hours department personnel had devoted to the Hummert case from the day he escaped until he was captured, multiplied by a typical hourly wage. Most of those hours were accrued in the first month following the escape. ADOC also claimed it had incurred hotel and airfare costs totaling $1,455.11 when one of its investigators traveled to Oregon. ADOC's Prison Operations claimed $28,495.20. That figure appears to have been based on salaries and wages paid for time allocated to Hummert's escape by approximately 160 ADOC personnel and staff on the day of the actual escape. The figure included significant overtime pay and incidentals such as gasoline and sack lunches.

**¶6**         Guilliams moved to depose the director of ADOC in order to determine the basis for ADOC's claim for restitution. The trial court denied the motion for deposition, noting that the director was not the proper witness to testify regarding the amount of restitution sought by ADOC. Other ADOC personnel testified as to the basis for ADOC's claims. After a contested hearing at which the trial court denied Guilliams's renewed objection to restitution, the trial court found ADOC's claim for 2,789 sack lunches unreasonable, allowing instead for only 304 meals, but otherwise approved the remainder of its claims and ordered Guilliams to pay $47,626.55 in restitution, itemized as follows:

4

$20,887.50 to the Criminal Investigations Bureau; $1,455.11 in hotel and airfare costs; and $25,283.94 in prison operations costs.

¶7 In his petition for post-conviction relief, Guilliams challenged the restitution order on two grounds: that ADOC was not a victim entitled to restitution under Arizona law, and that the costs of investigating an escape and recapturing the escapee were consequential damages and therefore not appropriate restitution for the crime of attempted escape. The trial court summarily denied the petition and confirmed its finding that ADOC was entitled to $47,626.55 in restitution from Guilliams.

**Discussion**

**a. Deposition of ADOC Director**

¶8 We first address Guilliams's complaint about the trial court's denial of his motion to depose the ADOC Director in preparation for the restitution hearing. The motion was based on the Director's having made public statements about the case and having written a letter to the trial court expressing his displeasure with the plea agreement. The Director responded, through a sworn affidavit, that he had not participated in and did not have direct knowledge of how ADOC had calculated its restitution request. In the absence of any showing that the Director was involved in making those calculations, we see no abuse of discretion in the trial court's refusal to order his deposition. *See State v. Fuller*, 143 Ariz. 571, 694 P.2d 1185 (1985).

5

**b. ADOC as Victim**

¶9        We next consider whether ADOC is a "victim" in this case for purposes of restitution. Section 13-603(C) provides in pertinent part:

> If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime . . . in the full amount of the economic loss as determined by the court and in the manner as determined by the court . . . pursuant to chapter 8 of this title.

Section 13-804, A.R.S., provides in pertinent part:

> A. Upon a defendant's conviction for an offense causing economic loss to any person, the court, in its sole discretion, may order that all or any portion of the fine imposed be allocated as restitution to be paid by the defendant to any person who suffered an economic loss caused by the defendant's conduct.
>
> B. In ordering restitution for economic loss pursuant to § 13-603, subsection C or subsection A of this section, the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted.

Section 13-901(A), A.R.S., provides in pertinent part:

> If probation is granted the court . . . shall order restitution pursuant to § 13-603, subsection C where there is a victim who has suffered economic loss.

Section 13-105(14), A.R.S., provides:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

6

¶10      Guilliams first argues, as he did below, that ADOC cannot be a victim for purposes of § 13-603(C), partly because ADOC does not fit within the definition of "victim" contained in the statutory and Arizona constitutional provisions addressing the rights of crime victims. He concedes that § 13-804 permits any portion of a fine to be allocated as restitution and ordered paid to "any person" but correctly notes that no fine was imposed here. We do not agree, however, that, as a matter of law, an institution such as ADOC cannot be a victim and be awarded restitution when no fine has been ordered simply because it is not a victim under a literal reading of the victims' rights provisions.

¶11      Guilliams essentially argues that ADOC is not entitled to restitution because escape is a victimless crime. *Cf. State v. Sorkhabi*, 202 Ariz. 450, 46 P.3d 1071 (App. 2002) (crime of resisting arrest, A.R.S. § 13-2508(A), not a victimless crime because statute contains element that offense be committed against or create risk of injury to another person). A "victimless crime" has been described as "'a crime which generally involves only the criminal, and which has no direct victim.'" *Id*. ¶ 11, 46 P.3d at 1074, *quoting Black's Law Dictionary* 1567-68 (6th ed. 1990). ADOC's entitlement to restitution, however, is not determined by the label attached to the offense, but rather, by the scope the legislature intended to give the term "victim" in the restitution statutes. *See State v. Foy*, 176 Ariz. 166, 859 P.2d 789 (App. 1993) (in construing restitution statutes, court reviews statutory scheme by examining legislative intent, the statutory language, the objectives to be accomplished, and the evils to be remedied).

7

**¶12**     The purpose of the restitution statutes is to make victims whole. *See State v. Lindsley*, 191 Ariz. 195, 953 P.2d 1248 (App. 1997); *State v. Ellis*, 172 Ariz. 549, 838 P.2d 1310 (App. 1992). Sections 13-105(14) and 13-603(C) require restitution for "economic loss" incurred by a "person as a result of the commission of an offense." The definition of "person" for this title includes a "government" and "a governmental authority." § 13-105(26).

**¶13**     Although the term "victim" is not defined in the statute, our supreme court interpreted the scope of § 13-603(C) in *State v. Wilkinson*, 202 Ariz. 27, 39 P.3d 1131 (2002). The court upheld, in part, a restitution award against a contractor who had been convicted of contracting without a license, a victimless crime. The court focused on the relationship between the criminal conduct and the claimed economic loss, noting that the test is whether the particular criminal conduct directly caused an economic loss. *See also State ex rel. McDougall v. Superior Court*, 186 Ariz. 218, 920 P.2d 784 (App. 1996) (defendant convicted of leaving the scene of an accident, a victimless crime, could be required to pay restitution for injuries suffered in accident if act of leaving aggravated injuries). And in *State ex rel. Romley v. Superior Court*, 184 Ariz. 409, 909 P.2d 476 (App. 1995), Division One of this court held that the owner of a car that had been damaged in an accident caused by an impaired driver was a victim for purposes of the Victims' Bill of Rights and the Victims' Rights Implentation Act.[2] Although the defendant argued that aggravated driving under the

---

[2]The victims' rights implementing statutes define "victim" as a "person against whom the criminal offense has been committed." A.R.S. § 13-4401(19). Although that definition applies only to title 13, chapter 40, the *Romley* court's analysis of the scope of that definition is instructive here.

influence of an intoxicant is a "victimless" crime, especially considering the driver of the damaged car had sustained no personal injuries, the court found that a victim need not suffer personal injury to be a crime victim. *Id*. at 410, 909 P.2d at 477.

¶14    Accordingly, even a so-called "victimless" crime can result in a victim entitled to a restitution award. Under this analysis, the restitution statutes do not require that a specific victim be named in a statute, indictment, or verdict form. A "victimless crime" may still support an award of restitution so long as the criminal act directly results in economic damages to the person or entity receiving the award.

¶15    In *Wilkinson*, the court explained that a burglar who breaks a window can be ordered to pay restitution for the costs of the broken window, even when damaging the building is not an element of burglary. And burglary does not include as an element that the crime be committed against a specific person. *See* A.R.S. §§ 13-1506 through 13-1508. We see no conceptual difference between awarding restitution for economic losses resulting from a burglary—essentially a criminal entry into a structure—and awarding restitution for economic losses resulting from an escape—essentially a criminal exit from a structure. We also see no reason why the result would be different whether the burgled (or escaped-from) building belonged to a private citizen or a governmental entity such as ADOC. Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Guilliams's broad claim that ADOC was not a victim entitled to any restitution whatsoever.

9

### c. Consequential Damages

¶16    We next turn to Guilliams's argument that the restitution awarded to ADOC was not warranted because it included consequential costs incurred by ADOC in investigating Hummert's escape and recapturing him, which are not appropriate restitution for the crime of escape. The parties have not cited us to any Arizona authority addressing whether, or to what extent, restitution is appropriate for economic loss caused by a prison escape, nor are we aware of any such authority.

¶17    In *Wilkinson*, our supreme court focused on the apparent tension in § 13-105(14), which authorizes restitution for losses which would not have been incurred "but for" the criminal offense, but expressly precludes restitution for "consequential damages." The court found restitution must be (1) based on economic loss that (2) would not have occurred but for the criminal act. The court concluded that, additionally,

> the statutory scheme imposes a third requirement: the criminal conduct must directly cause the economic loss. If the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes. . . . We hold, therefore, that the statutes direct a court to award restitution for those damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors.

*Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d 1131, 1133.

¶18    Arizona is not alone in allowing restitution for direct, but not indirect, economic losses resulting from criminal conduct. In *United States v. Vaknin*, 112 F.3d 579 (1st Cir. 1997), the court interpreted the federal restitution statutes incorporated in the Victim Witness

10

and Protection Act (VWPA), 18 U.S.C. §§ 3663(a) and 3664(a). The *Vaknin* court wrestled with what it called "the causation quandary" because the federal restitution statutory scheme had been interpreted to require restitution to be determined by the different standards of "but for" causation *and* "direct" causation; each party in *Vaknin* advocated for one or the other. 112 F.3d at 586, 588. This is the same ambiguity as found in the Arizona statutes and addressed in *Wilkinson.* The *Vaknin* court concluded:

> [W]e hold that a modified but for standard of causation is appropriate for restitution under the VWPA. This means, in effect, that the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally). The watchword is reasonableness. A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe.

112 F.3d at 589-90. We find the First Circuit's "modified but for standard," *id.*, to be a practical articulation of the Arizona standard and consistent with this state's caselaw. *See Lindsley*, 191 Ariz. at 198, 953 P.2d at 1251 ("'but for' cause . . . is a necessary but not sufficient condition to restitution . . . the distinguishing feature is how directly the loss flows from the crime"); *see also State v. Madrid*, ___ Ariz. ___, ¶ 1, 85 P.3d 1054, 1055 (App. 2004) (upholding restitution awarded for "reasonable" expenses related to murder victim's children's trial attendance). Accordingly, we apply that standard here.

¶19 Although the trial court only allowed a portion of ADOC's claims for sack lunches, it otherwise approved ADOC's entire restitution request. In denying Guilliams's

11

petition for post-conviction relief, which challenged both whether ADOC could be a victim for restitution purposes and whether "[t]he costs of investigation of an escape and the recapture of an escapee are consequential damages and are not economic loss within the terms of Arizona Law," the trial court did not expressly address the latter claim. However, in denying the petition and affirming its restitution order, the court implicitly found that all of ADOC's costs of investigating Hummert's escape and recapturing him were economic losses subject to restitution. Applying a case-specific, modified but for standard based on reasonableness to the facts as we understand them, we do not agree.

¶20 The limited record before us contains only a portion of the restitution hearing transcript, and the trial court's restitution order did not contain any detailed factual findings on which it was based. Accordingly, we cannot determine the extent to which the restitution order accurately reflects ADOC's direct economic losses and those justifiably attributed to Guilliams's criminal conduct. We do, however, have a significant enough portion of that transcript to determine that Guilliams's argument had at least some merit. We also have before us ADOC's documents supporting its restitution request. Accordingly, we have a sufficient record on which to make some preliminary observations.

¶21 Certainly, any costs incurred as a result of damage to or unauthorized use of ADOC property during an escape or escape attempt itself are direct costs of that escape. Similarly, the costs of any extraordinary security practices and precautions that are set in motion in immediate response to an escape—lockdown, roving patrols around the prison perimeter, and the like—are also direct costs of the escape attempt, in manpower, equipment,

12

and supplies, to the extent they are above and beyond the normal costs of operating the prison. It appears that the portion of the restitution order accounting for $25,283.94 in prison operations costs was based on costs the prison incurred on the day of the escape, and probably reflects extraordinary costs to the prison resulting from the escape. This part of the restitution award was evidently based on an "escape apprehension costs" spreadsheet dated September 29, 2000, the day of the escape, which is part of the record before us. According to that document, the majority of the costs are personnel costs for overtime, indicating that these costs are beyond the normal cost of operating the prison that day.[3]

¶22     The justifiability of the remainder of the restitution award is less clear. Of the amount the court allocated, $20,887.50 was itemized as costs incurred by the Criminal Investigations Bureau. Based on testimony at the restitution hearing and an ADOC memorandum in the record, this figure was based on nearly 1,200 hours employees had expended from the day Hummert escaped until several days after he was captured on or about November 16, 2000. This part of the restitution award apparently included costs associated in the memorandum with "conducting interviews," "writing reports," "collecting evidence," meetings with an "FBI task force" and the "Pinal County Att[orne]y's office," "evidence submission" and "preparing the case [against both Hummert and Guilliams] for court presentation," "attempt[ing] to locate the person who sold a vehicle to Hummert," and an

_____

[3]We note that the spreadsheet included entries for four prison administrators working twenty or more hours each on this day. It is not clear how all of these costs would be above normal operating costs, unless those persons normally would not have been working on September 29, 2000, which was a Friday.

13

"attempt to interview Hummert in Eugene Or[egon]" after he had been apprehended by the FBI. An additional $1,455.11 restitution was allocated toward hotel, airfare, and other costs incurred by ADOC investigators in traveling to Oregon to attempt to conduct those interviews.[4]

¶23 Although these ADOC investigators certainly would not have devoted these hours to Hummert's case but for Guilliams's criminal actions, many of these costs were attenuated from Guilliams's criminal act, temporally if not factually. In other words, we see a difference, in this case at least, between extraordinary costs directly resulting from an escape and attenuated costs incurred in investigating an escape that has been successful. We are struck by how most of these latter costs are similar to, if not indistinguishable from, the normal costs of investigating any crime and arresting and capturing the suspect. Indeed, extending the state's argument to its logical conclusion, the FBI and the Pinal County Attorney's office are also arguably entitled to restitution for their costs in the Hummert case. For that matter, so is the jail, the superior court, the probation department, and even this court. We decline to construe the restitution laws to encompass costs incurred by governmental entities that are performing their routine functions, regardless of whether those costs can be traced back to a criminal act. Moreover, nothing in the record establishes that the employee-related costs incurred by the Criminal Investigations Bureau in this case were based on overtime or were otherwise above and beyond the normal costs of prison operation. Although

---

[4]We leave to the trial court's sound discretion the task of determining whether and to what extent travel costs are justifiable and amenable to restitution under the guidelines we set out, *infra*.

14

the escape undoubtedly created additional burdens for ADOC personnel, if these investigators would otherwise have been earning the same salary or wages working on different cases or projects, these costs do not represent a measurable *economic* loss to ADOC.

¶24    There is a paucity of caselaw on this point. In *State v. Jones*, 724 P.2d 146, 148 (Kan. Ct. App. 1986), the court was presented with the question whether a Kansas statute, which authorized "restitution to the aggrieved party for the damage or loss caused by the defendant's crime," provided for restitution to the State of Kansas from a prison escapee for costs incurred in capturing the escaped prisoner. The court found no bar to considering a governmental unit an aggrieved party for purposes of the statute, as we have, but concluded that "the legislature did not intend that the manpower costs incurred to capture an escaped prisoner be subject to a court order that a defendant reimburse the State." *Id.* We find this to be a sensible approach.

¶25    Certainly, the distinction between an escape in progress and one that has been successfully accomplished will often be murky; it will not always be clear when a trail has gone cold. But a "reasonableness" standard for attenuated causation is well-suited to guide any such line drawing, and, as with any such discretionary decision entrusted to the trial court, our review will be deferential. *See Madrid*, ___ Ariz. ___, ¶ 5, 85 P.3d at 1056 (in assigning restitution, trial court has "substantial discretion" in determining amount of economic loss).

¶26    Finally, we find the state's reliance on *State v. Maupin*, 166 Ariz. 250, 801 P.2d 485 (App. 1990), misplaced. The court in *Maupin* held that the trial court had authority under § 13-804 to order the defendant to pay his extradition costs as part of his sentence when the

defendant had stipulated to do so in the plea agreement, notwithstanding that the court technically had not designated those costs as a fine. Although Guilliams agreed to pay restitution up to one million dollars as a term of his plea agreement, nothing in that provision suggests that he agreed to pay any restitution not warranted by Arizona law, and he clearly did not stipulate to pay for the costs associated with Hummert's apprehension. Guilliams opposed the restitution sought by the state both before it was ordered and in post-conviction relief proceedings, and in neither of the state's responses did it ever suggest that Guilliams had agreed to pay restitution unconditionally as a term of the plea agreement. *See In re Maricopa County Juvenile Action No. JV-128676*, 177 Ariz. 352, 868 P.2d 365 (App. 1994) (provision in plea agreement in which juvenile agreed to pay restitution up to a maximum of $750 if found legally responsible for the damages was not an unconditional agreement to pay restitution). Accordingly, *Maupin* is not dispositive. Moreover, as Guilliams correctly notes, *Maupin* also held that the state may not recover extradition costs through restitution ordered under the authority of § 13-603(C).

**Disposition**

¶27        "When an appellate court cannot determine the basis of the restitution order from the record, the proper remedy is to vacate that portion of the sentence, and remand to the trial court to reconsider the propriety of the restitution order and to specify the basis for its determination." *State v. Iniguez*, 169 Ariz. 538, 535, 821 P.2d 194, 199 (App. 1991). Accordingly, we vacate the trial court's $47,626.55 restitution order in favor of ADOC and remand for a redetermination of that order consistent with this decision.

16

**¶28**        We grant the petition for review, and we grant partial relief.

_____
                                                         PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
JOHN PELANDER, Presiding Judge


_____
PETER J. ECKERSTROM, Judge