IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

IN RE J.U.

No. 2 CA-JV 2016-0064
Filed November 2, 2016

---

Appeal from the Superior Court in Cochise County
No. JV201500109
The Honorable Karl D. Elledge, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Brian M. McIntyre, Cochise County Attorney
By Nancy J. Galey, Deputy County Attorney, Sierra Vista
*Counsel for State*

Emily Danies, Tucson
*Counsel for Minor*

---

**OPINION**

Chief Judge Eckerstrom authored the opinion of the Court, in which
Presiding Judge Vásquez and Judge Brammer[1] concurred.

---

[1]The Hon. J. William Brammer, Jr., a retired judge of this
court, is called back to active duty to serve on this case pursuant to
orders of this court and our supreme court.

E C K E R S T R O M, Chief Judge:

**¶1**　　　J.U. and two other juveniles telephoned two schools and threatened them with a "terrorist attack," resulting in the evacuation and closure of the schools. After an adjudication hearing on a forty-eight count, amended delinquency petition, the juvenile court found J.U. had committed all but eight of the charges. On appeal, J.U. challenges the court's restitution order, entered after a combined restitution and disposition hearing. We vacate a portion of the restitution order and affirm the remainder for the reasons that follow.

**¶2**　　　We view the evidence presented at the adjudication and restitution hearings in the light most favorable to sustaining the juvenile court's rulings. *See In re Andrew C.*, 215 Ariz. 366, ¶ 6, 160 P.3d 687, 688 (App. 2007); *In re James P.*, 214 Ariz. 420, ¶ 2, 153 P.3d 1049, 1051 (App. 2007). On August 26, 2015, J.U. and two other high school students called two Douglas schools using a cell phone in Mexico. In both instances, the caller left a recorded message that school personnel received the next day, stating he would "be doing [a] terrorist attack" and that the school must be closed for seventy-two hours. On August 27, the students called the schools a second time, pointing out one of the schools had not closed as directed and stating, "I am not playing games, with you, do not play games with me, please I do not want to harm the children or the teachers." The Douglas Police Department (DPD) responded to the initial calls, evacuated and searched the schools for firearms or explosive devices, and investigated the threats. As a result of the investigation, J.U. was charged with multiple offenses.

**¶3**　　　After an adjudication hearing, the juvenile court found J.U. delinquent and that the state had proved beyond a reasonable doubt multiple counts of the following offenses: threatening or intimidating; conspiracy to commit threatening or intimidating; use of an electronic communication to terrify, intimidate, or harass; conspiracy to commit use of an electronic communication to terrify, intimidate, or harass; false reporting by initiating a report of a bombing, fire, offense, or other emergency; interference with or disruption of an educational institution; and conspiracy to commit

interference with or disruption of an educational institution. Relevant to this case, the court found J.U. responsible on eight counts of false reporting under A.R.S. § 13-2907: two violations of § 13-2907(A)(1) and two violations of § 13-2907(A)(3), committed on August 26, and the same violations of these subsections on August 27. Under § 13-2907(A)(1) a person commits false reporting "by initiating or circulating a report of a bombing, fire, offense or other emergency knowing that such report is false and intending" to "cause action of any sort by an official or volunteer agency organized to deal with emergencies." Under § 13-2907(A)(3) a person commits the offense by committing the same conduct, intending to "prevent or interrupt the occupation of any building, room, place of assembly, public place or means of transportation."

¶4        At a subsequent restitution hearing, the state presented general claims for restitution on behalf of the schools and DPD and requested restitution pursuant to § 13-2907 for the expenses DPD had incurred investigating and responding to the false report of a terrorist attack. The statute imposes liability on a person who commits the offense of false reporting for an agency's emergency-response or investigation expenses, authorizing the juvenile court to order a juvenile to pay this amount as restitution. § 13-2907(B).

¶5        Kraig Fullen, DPD's chief of police, testified at the restitution hearing that his agency was requesting $5,957.21 for emergency response to and investigation of the offense, explaining the supporting documentation admitted as an exhibit.[2] The exhibit shows both regular hours and overtime paid for officers related to those efforts. He also testified the officers had been required to travel to attend court hearings in Sierra Vista and requested reimbursement for mileage DPD paid for those trips.

---

[2]Although the transcript suggests the police chief requested $10 more at the restitution hearing, his request clearly was based on DPD's statement of loss, and the juvenile court ultimately awarded the $5,957.21 requested in that document.

¶6            J.U. concedes that after reducing portions of the amounts the schools requested, the juvenile court entered appropriate restitution awards to each.  He contends the court erred, however, when it awarded DPD the full $5,957.21 requested pursuant to § 13-2907.  J.U. argues the statute does not contemplate awarding an agency investigative costs after the emergency has ended, which he claims it had by August 31, 2015, the date he contends Fullen testified an emergency no longer existed.  J.U. asks this court to "interpret the statute strictly and hold that only direct costs related to the immediate response and investigation are recoverable and that expenses attributable to an ongoing investigation and prosecution after the emergency passes are too attenuated and thus, unrecoverable."  He insists the order must be reduced by $5,061.63, which is the total amount for time DPD officers expended on the case during their regular working hours, overtime hours, and mileage DPD paid for its officers' travel to and from the court for court hearings.

¶7            J.U. asserts he "timely objected to expenses incurred after the emergency response had ended."  The portion of the transcript he cites, however, does not support this contention.  It shows he objected during the state's direct examination of Fullen about reimbursement of DPD for the cost of having officers attend hearings, which, as discussed below, was part of the general restitution claimed by DPD as a victim.  J.U.'s counsel stated, "I think the statute says that the Court may impose for costs of the emergency response, but that's all the statute says."  When the court responded that it did not understand the objection, counsel stated, "The objection would be relevance" because the police chief intended to request reimbursement for the cost of gas to travel to and from court hearings in Sierra Vista.  The court overruled the objection.

¶8            During closing arguments, the prosecutor appeared to respond to J.U.'s earlier objection by asserting § 13-2907 does not limit compensable expenses to those incurred by an agency in responding to the emergency; rather, it includes the cost of investigating the false report as well.  J.U.'s only response to the state's closing argument was to ask the juvenile court not to require

J.U.'s parents to pay the restitution. Counsel then expressly submitted the matter to the court. Having failed to preserve the argument he now raises on appeal as to investigative costs beyond those incurred responding to an emergency, J.U. has forfeited the right to seek relief for all but fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005).

¶9　　　　A restitution order that is not supported by statutory authority is fundamental, prejudicial error. *See State v. Whitney*, 151 Ariz. 113, 115, 726 P.2d 210, 212 (App. 1985). To determine whether this restitution order was unlawful, we must interpret and determine the proper application of § 13-2907, a question of law that we review de novo. *See In re Casey G.*, 223 Ariz. 519, ¶ 1, 224 P.3d 1016, 1017 (App. 2010). "In interpreting a statute, we must ascertain and give effect to the legislature's intent in enacting it." *In re C.D.*, 240 Ariz. 240, ¶ 6, 377 P.3d 1034, 1036 (App. 2016). "The best indicator of that intent is the language of the statute itself." *Id.*, *quoting Casey G.*, 223 Ariz. 519, ¶ 2, 224 P.3d at 1017.

¶10　　　　Section 8-344(A), A.R.S., the general restitution statute applicable to juvenile proceedings, provides that when "a juvenile is adjudicated delinquent, the court . . . shall order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent." Section 13-2907(B) is a more specific statute pertaining to compensation of an agency as a result of false reporting; it states that a person convicted of that offense "is liable for the expenses that are incurred incident to the emergency response or the investigation of the commission of false reporting." When the person who commits the offense is a juvenile, however, § 13-2907(B) permits the court to "order the juvenile to pay the expenses incurred under this subsection as restitution."

¶11　　　　The statute defines "[e]xpenses" as "any reasonable costs that are directly incurred by a public agency . . . that makes an appropriate emergency response to an incident or an investigation of the commission of false reporting." § 13-2907(D)(1). The statute also specifies that "[e]xpenses include[] the costs of providing police, fire fighting, rescue and emergency medical services at the scene of

an incident and the salaries of the persons who respond to the incident." *Id.*

**¶12**    The plain language of § 13-2907 permits a juvenile court to order a juvenile who has been adjudicated delinquent to pay the costs specified in the statute as part of a restitution order. *See* 2005 Ariz. Sess. Laws, ch. 83, § 1; *see also* S. Fact Sheet for S.B. 1031, 47th Leg., 1st Reg. Sess. (Ariz. Feb. 23, 2005) (explaining bill passed by Senate Feb. 22, 2005, intended to permit courts to "[r]equire[] a person who is convicted of false reporting to pay the costs incurred in responding to and investigating the emergency"; permitting but not requiring juvenile court to order juvenile to pay expenses as part of restitution); H. Summary of S.B. 1031, 47th Leg., 1st Reg. Sess. (Ariz. Apr. 15, 2005) (summarizing bill transmitted to Governor) (amending statute expressly to "[a]llow[] the court to order a juvenile adjudicated delinquent for false reporting to pay expenses incurred as a result of the false reporting as restitution"). Nothing in the statute limits the investigation costs to those incurred only while an emergency continues to exist.[3]

**¶13**    Moreover, although J.U. asserts Fullen testified the emergency had ended by August 31, that was not the testimony. Fullen was asked whether there was an emergency on August 31, and he responded, "A direct emergency, no." Upon further questioning by the court, Fullen clarified sweeps of the school were conducted on that date and that the investigation continued on September 2 and 3.

**¶14**    J.U. suggests that case law interpreting the general restitution statute, A.R.S. § 13-603, provides guidance in determining whether an expense may be regarded as "directly related" to the investigation. J.U. urges us to rely in particular on *State v. Guilliams*, 208 Ariz. 48, 90 P.3d 785 (App. 2004). There, this court rejected the defendant's argument that the crime of escape was a "victimless

---

[3]To the extent J.U. contends that restitution is not recoverable for "officers . . . who[] . . . would have worked normal hours whether or not there was an emergency response," this argument is foreclosed by the text of the statute.

crime" for purposes of § 13-603(C) and the Arizona Department of Corrections (ADOC) was not a victim entitled to restitution. 208 Ariz. 48, ¶¶ 11, 15, 90 P.3d at 789-90. We granted the defendant partial relief, however, because the limited record suggested some of the damages included in the restitution order did not appear to represent direct economic losses but rather non-compensable, consequential damages. *Id.* ¶¶ 18-27.

¶15 Unlike the general restitution statute addressed in *Guilliams*, the language of § 13-2907(B) expressly imposes liability for two specific kinds of readily identifiable expenses: those incurred from an agency's response to an emergency and those incurred in investigating the false report that created the emergency. We therefore see no error, much less fundamental error, in the juvenile court's order requiring J.U. to pay costs that, based on the evidence presented at the adjudication and restitution hearings, were a direct result of the response to the report of a possible terrorist attack at the schools and the investigation into that report.[4]

¶16 Finally, J.U. contends the juvenile court erred by including in the restitution award to DPD the $570 in mileage it paid for twelve officers to travel to and from court to testify in three hearings in this matter. Arguing the award was improper under § 13-2907, he asserts summarily, but correctly, that the mileage was "not associated with any emergency response or investigation but only with J.U.'s prosecution." But the court did not award the

---

[4]J.U. also suggests some of the investigative costs were part of the costs of prosecution, which he insists are not compensable. But the record shows that although DPD continued to work on the case after September 3, 2015, and documented time spent through the adjudication hearing in March 2016, it sought restitution under § 13-2907 only for those expenses directly incurred in responding to the emergency and investigating the terrorist threat through September 3, 2015, when it determined the identity of all three perpetrators and initially gathered evidence. That the initial investigation also assisted the prosecution of J.U. and the other students does not change the fact that those actions qualified for restitution under the express terms of the statute.

mileage expenses pursuant to § 13-2907. Rather, as the state observed in its answering brief, it awarded them instead under the general restitution statutes, A.R.S. §§ 13-105(16) and 13-603(C).

¶17 In his reply brief, J.U. counters that the mileage award was not appropriate under those statutes either. He asserts the officers did not appear in court in their individual capacity, they are not individual victims, and law enforcement agencies are not, in any event, victims "within the meaning of" § 13-603(C).

¶18 We generally decline to address issues that are not argued adequately, with appropriate citation to supporting authority. *See* Ariz. R. Civ. App. P. 13(a)(7) (requiring appellant's brief to contain supporting legal authority and reasons for each contention); Ariz. R. P. Juv. Ct. 106(A) (applying ARCAP 13 to juvenile appeals); *cf. State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (claims waived for insufficient argument on appeal). Similarly, we typically do not consider arguments raised for the first time in a reply brief. *See State v. Brown*, 233 Ariz. 153, ¶ 28, 310 P.3d 29, 39 (App. 2013). But again, an improper restitution order is fundamental error. *See Whitney*, 151 Ariz. at 115, 726 P.2d at 212. And we conclude this portion of the order was erroneous.

¶19 "Restitution is appropriate for those losses that (1) are economic, (2) would not have occurred but for the juvenile's delinquent conduct, and (3) are directly caused by the delinquent conduct (e.g. not consequential damages)." *Andrew C.*, 215 Ariz. 366, ¶ 9, 160 P.3d at 689; *cf. State v. Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d 1131, 1133 (2002) (stating criteria for restitution payment by adult upon conviction). At the restitution hearing and in its order, the juvenile court articulated these factors in determining whether claimed losses were economic losses and therefore compensable under § 8-344(A). It concluded mileage is an "out of pocket cost[]" that qualifies as an economic loss under § 8-344(A) and ordered J.U. to pay mileage for two witnesses who had appeared on behalf of the schools and mileage DPD paid for twelve officers to appear at three court hearings.

¶20 We first reject J.U.'s contention in his reply brief that DPD is not a victim for purposes of restitution. In *Guilliams*, we

rejected the defendant's argument that ADOC was not a victim of the offense of escape for purposes of § 13-603(C). 208 Ariz. 48, ¶ 15, 90 P.3d at 790. Based on the same reasoning, DPD was a victim here. Moreover, DPD was a victim of the false reporting counts based on the plain language of § 13-2907(A)(1). It was the "official . . . agency organized to deal with emergencies" that was compelled to act because of the threatened attack of the two schools. § 13-2907(A)(1).

**¶21**      Expenses incurred by a victim to attend trial generally are considered an economic loss for purposes of general restitution statutes. *See State v. Madrid*, 207 Ariz. 296, ¶ 10, 85 P.3d 1054, 1058 (App. 2004) (finding travel expenses incurred by murder victim's children to attend trial "constitute an economic loss for which they are entitled to restitution"). Nevertheless, the juvenile court erred in ordering J.U. to pay DPD for the officers' mileage.[5]

**¶22**      In *Guilliams*, we adopted the "modified but for" standard utilized by the First Circuit Court of Appeals for determining whether losses are direct or consequential, an inquiry to be made on a case-by-case basis considering the reasonableness of the expenses. 208 Ariz. 48, ¶ 18, 90 P.3d at 790-91, *quoting United States v. Vaknin*, 112 F.3d 579, 589-90 (1st Cir. 1997). Addressing the issue of what constitutes an economic loss when the victim is a governmental entity, we "decline[d] to construe the restitution laws to encompass costs incurred by [such] entities that are performing their routine functions, regardless of whether those costs can be traced back to a criminal act." *Id.* ¶ 23. We stated in a footnote that we would leave to the "trial court's sound discretion the task of determining whether and to what extent travel costs are justifiable and amenable to restitution under the guidelines" we established in that case. *Id.* n.4.

---

[5]Because the issue was not raised here, we decline to address whether due process principles provide any limitation on a state's authority to shift to criminal defendants traditional prosecution-related costs incurred by public officers.

¶23      We need not remand the issue to the juvenile court here, however.  The mileage paid for the officers was not a "cost[] . . . beyond the normal costs of operating" DPD.  *Id.* ¶ 21.  Applying the test we articulated in *Guilliams*, we conclude the mileage was an expense incurred as part of the routine functioning of DPD, like any law enforcement agency, of having its officers testify in criminal proceedings in connection with the prosecution of a criminal offense.  Thus, in the absence of a statute expressly permitting these kinds of routine prosecution expenses as part of a restitution order, *see, e.g.*, Idaho Code § 37-2732(k), they do not constitute an economic loss for purposes of general restitution statutes.

¶24      We affirm the juvenile court's order adjudicating J.U. delinquent and the disposition.  We vacate the portion of the restitution order requiring J.U. to pay DPD $570 for its officers traveling to and from court, but affirm the order in all other respects.