NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TOMMY G.

No. 1 CA-JV 20-0386
FILED 5-18-2021

Appeal from the Superior Court in Maricopa County
No. JV205839
Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Law Offices of Kevin Breger, PLLC, Scottsdale
By Kevin Breger
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Judge Paul J. McMurdie delivered the Court's decision, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

¶1          Appellant Tommy G. appeals the juvenile court's award of restitution to a high school district and its insurer for damage to its gymnasium. On this record, we conclude that the juvenile court did not abuse its discretion by awarding the replacement cost of the vandalized doors or anti-vandal pulls. We, therefore, affirm the award.

## FACTS AND PROCEDURAL BACKGROUND

¶2          In October 2019, Tommy and two others broke into the high school gymnasium through the main doors by breaking windows. Once inside the gymnasium, they gained access to hallways and locker rooms by breaking through wooden doors to reach the locks and prying open the metal doors. They stole cash from a student store and vandalized much of the gymnasium, pouring detergent on equipment, setting off fire extinguishers, and smashing offices, windows, doorways, computers, and security cameras. This was the third break-in at that gymnasium in six days.

¶3          The following morning, an assistant principal reviewed the security footage and identified one of the juveniles. When confronted, the juvenile confessed but would not identify his cohorts. That same morning, the assistant superintendent for operations and athletics examined the gymnasium. With other employees, he assessed the damage, notified the insurance provider, and obtained quotes from the manufacturers to make repairs. Quotes included the cost of replacing and installing new doors and $773 for anti-vandal pulls, a security mechanism that protects the locks attached to the doors.[1] The original doors did not have anti-vandal pulls. The school provided the damage-repair estimate to the police and filed an

---

[1]          The parties estimate that the cost of the anti-vandal pulls was $773, but the price quotes in the record request a total of $744 for the anti-vandal pulls**.**

insurance claim. The school paid a $10,000 deductible, and the insurance company paid $22,136 toward repairs.

¶4        The police identified another accomplice, who also confessed. Eventually, the police identified Tommy as the remaining perpetrator.

¶5        The State filed a petition alleging that Tommy committed a burglary in the third degree under A.R.S. § 13-1506 and aggravated criminal damage under A.R.S. § 13-1604.

¶6        In January 2020, the school and insurance companies filed verified victim statements of financial loss, respectively seeking compensation for the deductible and reimbursement cost. Tommy entered a plea agreement where he admitted to aggravated criminal damage. The agreement required Tommy to "pay restitution to all victims, for all economic loss," and established that restitution was joint and several with the co-juvenile defendants. Tommy's parents were also held joint and severally liable up to a statutory limit of $10,000 under A.R.S. § 12-661(B) in the discretion of the court under A.R.S. § 8-344(A), (C) and A.R.S. § 12-661(A).

¶7        The court held a restitution hearing. At the hearing, the assistant superintendent related that he did not recall how many doors were broken or how many of them were made of metal. He could not remember the specific cost of each door in need of replacement. But he maintained that the purchase merely fixed the damaged doors and that the replacements were "like for like."

¶8        Tommy did not dispute the $10,000 deductible restitution owed to the school district at the hearing but disputed two aspects of the restitution request for the insurance company. He argued that the court should decline to order him to pay the anti-vandal pulls cost because such devices were not previously on the doors. He also argued that because the superintendent did not know what kind of doors needed to be replaced or how much they had cost, the court should reduce that part of the award from $8,737 to $5000.

¶9        The court found credible both the superintendent's testimony concerning which items were damaged and the school district's documentation of the repair cost. The court also concluded that the cost of the anti-vandal pulls was an "appropriate consequential damage" resulting from Tommy's vandalism because it would fund the prevention of further destruction. Accordingly, the court awarded $10,000 to the school district and $12,136 to the insurance company. Tommy and the other two juveniles

were jointly and severally liable for a total of $22,136. At the State's request, the court also found Tommy's parents jointly and severally liable for $10,000 of the award.

**¶10**        Tommy appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶11**        On appeal, Tommy[2] argues that the juvenile court abused its discretion for the following reasons: (1) the court granted the school district a windfall that went beyond the scope of restitution damages by awarding the costs of the door pulls because the school did not have them before the crime; (2) reimbursement for the door pulls was not appropriate because such an award constituted "consequential damages" that are beyond the scope of what the court could grant; and (3) there was insufficient evidence to support the court's finding of a reasonable relationship between the cost of the new doors and the losses incurred due to the damaged doors.

**¶12**        "The state has the burden of proving a restitution claim by a preponderance of the evidence." *State v. Lewis*, 222 Ariz. 321, 324, ¶ 7 (App. 2009). We will uphold a restitution award if it "bears a reasonable relationship to the victim's loss." *State v. Lindsley*, 191 Ariz. 195, 197 (App. 1997). "A court has wide discretion in setting restitution based on the facts of each case." *State v. Dixon*, 216 Ariz. 18, 21, ¶ 11 (App. 2007) (quoting *State v. Ellis*, 172 Ariz. 549, 551 (App.1992). We will not disturb the court's adjudication of a juvenile delinquent absent an abuse of discretion. *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7 (App. 1999); *see also State v. Slover*, 220 Ariz. 239, 242, ¶ 4 (App. 2009) ("A trial court abuses its discretion if it misapplies the law or exercises its discretion based on incorrect legal principles.").

---

[2]        Tommy passed away after the notice of appeal was filed. Under such circumstances, we must determine if it is appropriate to dismiss a pending appeal. *State v. Reed*, 248 Ariz. 72, 81, ¶ 31 (2020). We do not dismiss this appeal because Tommy's counsel submitted briefing and because the issue of whether the court correctly determined the restitution award remains a live controversy for Tommy's parents and the other juveniles, all of whom are jointly liable for the judgment.

## A. The Juvenile Court Correctly Awarded the Cost of the Anti-Vandal Pulls.

¶13     A court must "require the convicted person to make restitution . . . in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). In ordering restitution for economic loss under A.R.S. § 13-603(C), the court "shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted." A.R.S. § 13-804(B); *see also* A.R.S § 13-105(16) ("'Economic loss' means any loss incurred by a person as a result of the commission of an offense."). Economic loss does not include consequential damages. A.R.S. § 13-105(16).

¶14     Our supreme court has synthesized the applicable statutes to create three requirements for types of loss for which restitution may be ordered: (1) the loss must be economic; (2) the loss would not have occurred but for the defendant's criminal offense; and (3) "the criminal conduct must directly cause the economic loss" such that the loss did not result from the "concurrence of some causal event other than the defendant's criminal conduct." *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002).

¶15     As a preliminary matter, we note that if the juvenile court was correct to characterize its award of the cost of anti-vandal pulls as consequential damages, then it erred by awarding them. Not only are consequential damages categorically excluded from economic loss, thus failing to meet *Wilkinson*'s first requirement, they also "do not flow directly or immediately" from an action. *State v. Morris*, 173 Ariz. 14, 17 (App. 1992) (quoting 25 C.J.S., Damages, § 2 at 617). Thus, they fail to meet the third requirement. Nonetheless, because we will "affirm the trial court's ruling if the result was legally correct for any reason," we will affirm the award of the cost of the anti-vandal pulls if it constitutes restitution. *State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015) (quoting *State v. Perez*, 141 Ariz. 459, 464 (1984)).

¶16     A defendant is only liable in restitution for a particular loss if "the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Lewis*, 222 Ariz. at 325, ¶ 11 (quoting *State v. Guilliams*, 208 Ariz. 48, 53, ¶ 18 (App. 2004)). This inquiry is "fact-specific." *Id.* (quoting *Guilliams*, 208 Ariz. at 53, ¶ 18). Payments necessary to restore a victim's equanimity lost due to the offense are not too attenuated. *State v. Quijada*, 246 Ariz. 356, 369–70, ¶ 44 (App. 2019). For example, this court determined that the cost of a home security system's installation and one-year's maintenance constituted economic loss for restitution because the victim felt vulnerable, particularly after discovering

5

that one of the defendants had searched for a photograph of her while burglarizing her home. *Quijada*, 246 Ariz. at 370, ¶¶ 46–47. Similarly, moving expenses constituted an economic loss to a victim because they were necessary to restore her equanimity after the defendant sexually assaulted her. *State v. Brady*, 169 Ariz. 447, 448 (App. 1991). There, the restitution was "doubly warranted" because it was necessary to avoid an ongoing threat. *Id.*

¶17        Here, the causal nexus between Tommy and his accomplices' break-in and the school's increased security concerns is not too attenuated. Like the expenses in *Brady*, the door-pull expenses prevented an ongoing danger. By breaking into and vandalizing the gymnasium, Tommy and his accomplices demonstrated that the school district could anticipate similar break-ins with its previous security system. The district was particularly vulnerable to Tommy and one of his accomplices, both of whom were still unidentified at the time of the proposal. Given our deference to the trial court's findings, we conclude that sufficient evidence supported its conclusion that restitution was necessary to rectify the school district's vulnerability to similar acts.

¶18        Moreover, the remedy is proportionate. Unlike the *Quijada* court, which delved into the fact-specific inquiry of how much a defendant must pay for the ongoing maintenance of a security system, we are left with the more straightforward installation question. The door-pulls were a one-time purchase that improved a demonstrably flawed security system. Thus, the trial court did not err by concluding that Tommy's part in the vandalism was a direct cause of the expense devoted to the anti-vandal pulls. The cost of the pulls was an economic loss, appropriate as restitution.

**B.        Sufficient Evidence Supports the Court's Finding of a Reasonable Relationship Between the Cost of Purchasing and Installing the New Doors and the School's Loss.**

¶19        Tommy argues that because the assistant superintendent did not remember the specific cost, brand, or manufacturer of the doors that the school district replaced, there was insufficient evidence to justify a restitution award equal to the value of the new doors.

¶20        We view the facts in the light most favorable to affirming the juvenile court's findings. *In re Andrew A.*, 203 Ariz. 585, 586, ¶ 5 (App. 2002). The juvenile court heard testimony from the assistant superintendent that he and other school employees had been present to observe the damage to the gymnasium and had obtained replacement quotes from contractors that

same day based on these observations. The court also heard that the district provided the insurance company with sufficient documentation to support its claim. It is not necessary that the superintendent recall from memory the number of doors, the material from which they were purchased, or their original price. It is sufficient that there was an adequate foundation for the admission and consideration of costs to rectify the damage. Further, the court found the superintendent's testimony credible that, at the time of the replacement, the school's order was to make the replacements "like for like." *See State v. Stutler*, 243 Ariz. 128, 131, ¶ 8 (App. 2017) (victim's testimony and loss affidavit are sufficient to support a $900 award in lost earnings).

**CONCLUSION**

¶21         We affirm the award.

