IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

KANDICE DENISE QUIJADA, *Petitioner*.

No. 1 CA-CR 18-0247 PRPC
FILED 3-28-2019

Petition for Review from the Superior Court in Yuma County
No. S1400CR201201250
The Honorable Lawrence C. Kenworthy, Judge

**REVIEW GRANTED; RELIEF GRANTED IN PART**

**COUNSEL**

Yuma County Attorney's Office, Yuma
By Charles Platt
*Counsel for Respondent*

Elizabeth Brown Attorney at Law, Goodyear
By Elizabeth M. Brown
*Counsel for Petitioner*

Arizona Voice for Crime Victims
By Colleen Clase
*Counsel for Amicus Curiae*

National Crime Victim Law Institute
By Margaret Garvin
*Counsel for Amicus Curiae*

Arizona Attorneys for Criminal Justice
By David J. Euchner
*Counsel for Amicus Curiae*

---

**OPINION**

---

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen joined. Judge David D. Weinzweig specially concurred.

---

**M c M U R D I E**, Judge:

¶1        Petitioner Kandice Denise Quijada seeks review from the superior court's dismissal of her petition for post-conviction relief under Arizona Rule of Criminal Procedure 32.1. We grant review, grant relief in part, and hold: (1) the superior court deprived Quijada of due process by imposing restitution without first allowing her an opportunity to question the victim at a restitution hearing; (2) when appropriate, parties may subpoena a victim to appear and testify at a restitution hearing without violating the Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1, and its related statutes and rules; (3) if the victim fails to comply with a subpoena to appear and testify at a restitution hearing, the court may not hold the victim in contempt, but must consider the victim's refusal to testify as it relates to both the defendant's ability to contest restitution and the State's ability to meet its burden of proof; (4) a theft victim whose equanimity is damaged by the crime may recover as restitution the costs incurred by installing a home security system that is necessary to restore the victim's equanimity; and (5) the victim may recover the costs of maintaining a home security system as restitution only for a reasonable period necessary to restore equanimity.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The victim and her then-husband hired a house-sitter to watch their home and feed their pets during a two-week vacation in late 2012. The house-sitter twice invited her brother (the "co-defendant") and Quijada to visit her at the victim's home. While Quijada distracted the house-sitter, the co-defendant stole assorted items from the house. Quijada later pawned at least three of the stolen items and split the proceeds with the co-defendant.

¶3        After the victim returned from her vacation, she received a text message from the house-sitter that the co-defendant and Quijada had stolen items from the home. Within two hours of receiving the text, the victim called the police. A deputy responded and recorded an interview with the victim. In the recorded conversation, the victim reported that all the jewelry the thieves took were "studs." The victim described studs as fakes that "you can wear . . . where ever and feel safe." For example, the victim said a missing ring with stones of about a carat in weight "that look like diamonds" was "probably only worth maybe 200, 300 dollars." Also missing was a ring the victim said contained a "replica of a pink sapphire" about four carats in weight in a white gold setting. The victim said the thieves also took a white gold bracelet about three inches wide with blue and white simulated gems and a "stud" "tennis bracelet" with faux diamonds. The officer asked her, "Real diamonds?" and she replied, "No, this is another stud. All the things that they took, thank God, are the studs of my mom's jewelry." Finally, the victim specifically denied that she owned a Rolex watch. The resulting police report stated that the "victim lost many items of jewelry, some of which were items that she had not seen in quite some time" and the victim "provide[d] descriptions of several jewelry items." However, the report cautioned that the victim "believed many more items are missing" and that "[t]he property loss description is incomplete." Police subsequently found several stolen items in the co-defendant's car and local pawn shops and returned the items to the victim.

¶4        In December 2012, the State charged Quijada with one count of burglary in the second degree and one count of trafficking in stolen property in the first degree. The next day, the victim wrote a letter to the superior court explaining that after her interview with the police she had discovered additional missing items, and warning the list could grow. She also expressed fear that the co-defendant and Quijada might exact revenge against her, which made her feel unsafe in her home because her "husband was working in Afghanistan" for an extended, open-ended period.

¶5        Quijada pled guilty to one count of facilitation to commit trafficking in stolen property in the first degree and stipulated to pay restitution "on all original counts not to exceed one hundred thousand dollars." At sentencing, the court suspended the imposition of Quijada's sentence and placed her on two years of supervised probation. As a condition of her probation, Quijada was required to pay all restitution imposed by the court. Because the victim had not submitted a specific request for restitution by sentencing, the court retained jurisdiction to impose restitution.

¶6　　　　In May 2014, the victim provided an unsworn restitution statement to the State reporting total financial losses of $5530.75, almost one-third of which was the cost of installing and maintaining a home security system for the victim's home. The personal items listed in the statement were: (1) $500 in cash; (2) "Manolo Blahnik Size 38 [Pink] Boot"; (3) "Manolo Blahnik Size 38 Blue"; (4) an "iPad2"; and (5) an "Ostrich iPhone case [and] other leather cases" valued in total around $3800. No jewelry was on the victim's list of missing items. Between May 28 and July 15, the victim submitted an unsworn "second update," which totaled $13,252.25, including a tennis bracelet worth "about $6,000." The updated statement referenced additional items, including several other jewelry pieces (gold necklace, amethyst and garnet beads, gold bracelet, diamond ring, Rolex watch), clothes, and electronics.

¶7　　　　Because the victim provided no supporting documentation for either restitution statement, the State asked the victim to provide documentation of her economic loss. On July 15, six weeks after signing the May statement, the victim presented a third unsworn restitution statement to the State, seeking a total of $45,320.18. The July statement included (in addition to the Manolo Blahnik footwear): (1) a tennis bracelet valued at $10,800; (2) a gold "goddess bangle" worth $4500; (3) a diamond ring valued at $2098; (4) a Tiffany & Co. necklace with a cross pendant valued at $2850; (5) a diamond "flower bracelet" valued at $1579; (6) a Movado men's watch valued at $450; (7) a "Bianca ring" with a sapphire and diamonds worth $8005; and (8) 16 bracelets with "14k gold clasps, beads, garnets, fresh water pearls [and] amethysts," worth $4400. The victim also submitted invoices for a portable scanner, phone and tablet cases, an iPad, and certain clothing. To account for the value of the jewelry listed in the statement, the victim relied on printouts from internet catalogs depicting pieces she believed were similar or the "closest [she] could get" to the jewelry she claimed had been stolen. Many of the printouts also contained her handwritten annotations describing the differences, in her opinion, between the nature and value of her pieces of jewelry and the jewelry listed in the printout. In the July 15 statement, the victim did not claim the missing fake jewelry she identified in the police interview.

¶8　　　　The superior court initially scheduled a restitution hearing for May 2014. The State subpoenaed the victim to appear and testify. The victim appeared, but the court continued the hearing because Quijada and her counsel had not received notice of the hearing. The court rescheduled the restitution hearing for July 2014, and the State again subpoenaed the victim to attend. But the hearing was again continued because the prosecutor could not be present on that date. The court continued the hearing until

August 2014, and the State again subpoenaed the victim to appear and testify. The victim appeared for the hearing but left the courthouse before she could be called to testify because she fell ill. Although the victim had left the courthouse, the court ordered the State to submit her restitution statements. Quijada sought a continuance of the hearing to allow her attorney to review the restitution documents possessed by the State and to question the victim at the rescheduled hearing. The State filed the first and third restitution statements on the same day as the hearing but failed to present the second statement until November 2014.

¶9　　　　The next scheduled restitution hearing was in October 2014. The State requested the victim's presence but did not subpoena her to attend. At the scheduled time for the hearing, the State informed the court that after leaving the August 2014 hearing due to illness, the victim was either unwilling or unable to participate further. The State argued the court should order restitution based on the victim's written restitution statements alone. Quijada objected on due-process grounds, emphasizing that the victim's "paperwork" was insufficient to support a $45,320.18 restitution award absent a hearing at which she could challenge the victim about her claim. In response, the State acknowledged that the "whole purpose" of the scheduled restitution hearing was to elicit the victim's testimony, but argued the restitution statements were enough for the court to order restitution. After hearing the parties' arguments, the court expressed its inclination to take the matter of restitution under advisement but solicited additional briefing on Quijada's arguments.

¶10　　　Quijada filed a written objection to proceeding without a hearing. Quijada argued her due-process right to contest the information on which a restitution award is based required that she be given an opportunity to question the victim at a restitution hearing. Quijada contended that because "the proponent of the requested restitution has absented herself from the hearing process," it was impossible "to properly challenge or contest the amount requested." In response, the State cautioned that it was not vouching for the victim, but argued the information she submitted in her unsworn statements supported her claim for restitution, and that the victim had "appeared at prior court proceedings."

¶11　　　The court entered its restitution order in December 2014. The court characterized Quijada's objections as an argument that the State had failed to carry its "burden to show by a preponderance that the victim suffered the losses claimed in the restitution statements." The court also noted the victim had been unavailable due to illness and found, without citing any support, that this illness "prevents [the] victim from appearing

at a future hearing." The court then found by a preponderance of the evidence that Quijada had caused the victim to suffer economic losses of $39,969.37. The court cataloged the economic losses in 23 numbered paragraphs but acknowledged that the restitution order must be "reduced by whatever amount is later determined to have been returned to [the] victim."

¶12        The court ordered restitution for lost items of jewelry, clothes, and other consumer goods, and ordered Quijada to pay: (1) $1278.89 for the installation of a security system at the victim's home in May 2013; (2) $108.31 for the security system's activation fee; and (3) $719.89 for 16 months of the security system's monthly service. The court found that restitution for these expenses was appropriate because the victim felt vulnerable after she learned that the co-defendant had asked about a picture of her and because the victim's husband was overseas.

¶13        In March 2016, the court extended the term of Quijada's probation for five years because Quijada had not yet paid the restitution in full. In June 2016, Quijada petitioned for post-conviction relief.[1] She asked the superior court to modify the restitution order for four reasons. First, Quijada emphasized her limited role in the crime and argued the restitution award thus "exceed[ed] the maximum amount of restitution recoverable by law." Second, Quijada asserted the restitution award was not supported by sufficient evidence because the victim had not filed an affidavit, testified, submitted any proof of purchase for most of the allegedly stolen items, or demonstrated that her losses were not recoverable from insurance. Given the lack of substantiation, Quijada argued the restitution proceedings failed to provide her with a meaningful opportunity to contest the evidence submitted by the victim. Third, Quijada contended the victim could not recover expenses for installing a home security system, characterizing those expenses as "consequential damages." Finally, Quijada argued the

---

[1]        On its face, Quijada's petition appears to be untimely filed. Ariz. R. Crim. P. 32.4(a)(2)(C). However, Rule 32.2(c) provides the State must plead and prove preclusion by a preponderance of the evidence. The State did not plead preclusion in the superior court or in opposition to the petition for review. While a court "may" determine that an issue is precluded even if the State does not raise preclusion, Ariz. R. Crim. P. 32.2(c), the superior court did not apply preclusion to the claims. While this court has the discretion to apply preclusion on review without the State pleading the defense, given the lack of record regarding the timeliness issue, we decline to exercise our discretion to do so.

restitution award should have been reduced to account for items that police recovered from the co-defendant and a pawnshop.

¶14         The superior court summarily rejected the first three arguments but found the final argument to be colorable. The court reasoned that: (1) Quijada was liable for restitution because she was present during the burglary and created a distraction to help her co-defendant steal the victim's property; (2) the victim's itemized list of stolen property provided sufficient detail and specificity of her economic losses and the restitution award represented the fair market value of the stolen property; (3) the evidence supported a finding that the victim's insurance had not covered any of her losses; and (4) the victim had installed the home security system because she "reasonably feared" that Quijada and the co-defendant might return to her home "for the purpose of harming [her]." The court determined, however, that Quijada presented a colorable claim about whether stolen items had been recovered or returned since the court issued the restitution order, and scheduled an evidentiary hearing on that issue.

¶15         Before the hearing, the State informed the court that the victim was out of town for an extended period and therefore was unable to attend any hearing the court might hold on the matter. The State also disclosed that six pieces of the victim's jewelry of unknown value remained in police custody.

¶16         The victim's ex-husband and a police officer testified at the post-conviction relief hearing. The ex-husband was married to the victim for four years, including during the time of the theft. He called the victim a "liar" and testified he had never seen the victim with certain items she had reported as stolen, including the expensive jewelry and shoes. He also testified that he purchased a Tiffany & Co. necklace with a cross pendant for the victim, to replace one she previously lost, while they were on the vacation when the burglaries occurred. He did not testify whether it was the same Tiffany & Co. necklace listed in the victim's restitution statement. The police officer testified that six pieces of jewelry had been recovered, but he did not know their value.

¶17         At the hearing, the State informed the court that it had been unable to speak with the victim despite numerous attempts to contact her by email and telephone and that it would have subpoenaed the victim, but did not know her location. The State expressed "serious misgivings" about the accuracy of the victim's restitution claim, pointing to inconsistencies between the oral statements she made to the police immediately after the theft and her later written restitution statements. For example, when police first interviewed the victim, she denied that she owned a Rolex watch, but

later claimed a Rolex watch had been stolen. The prosecutor stated he believed the victim needed to verify her claims to ensure the court had "correct" and "true information."

¶18 After the hearing, the State filed a lengthy memorandum that analyzed the evidence the victim submitted to substantiate the claimed value of each allegedly stolen item. Based on this analysis, the State recommended the court reduce its restitution award to include only the things that had values corroborated either by the victim's prior statements or by invoices, receipts, or contracts (iPad: $499; installation, activation, and maintenance of a home security system: $1927.08; leather iPhone cases: $299.94; platinum ring: $2098; scanner: $96.90; clothing: $890.29; cross pendant: $295; flower bracelet: $350; beads: $75.21; amethyst: $165), for a total of $6696.42. Quijada moved to set aside the restitution order in full, but alternatively endorsed the State's recommendation. Following another hearing to discuss the State's memorandum, the State moved to either subpoena the victim or appoint a representative to appear on her behalf.

¶19 The court reaffirmed its previous finding that Quijada had caused the economic losses and increased the restitution award to $40,885.42. To correct a "clerical error," the court reduced the restitution ordered for the home security system's monthly service fees from $719.89 for 16 months to $539.88 for 12 months. The court denied the requests to subpoena the victim or appoint a victim representative and characterized the parties' arguments at the post-conviction relief evidentiary hearing as an improper attempt to introduce "additional evidence" or a request to "reweigh[] the evidence." The court dismissed Quijada's remaining post-conviction relief claims. This petition for review followed.

¶20 On review, Quijada contends that: (1) she was denied due process when she was not afforded the opportunity to question the victim at a restitution hearing; (2) the superior court had insufficient evidence for the restitution order; and (3) the court incorrectly characterized her post-conviction relief arguments as presenting new evidence. After considering the petition for review and the response, we ordered supplemental briefing on five additional issues: (1) whether expenses the victim incurred to install and maintain an alarm system after the crime constitute economic loss or consequential damage under Arizona Revised Statutes ("A.R.S.") section 13-105(16); (2) whether a criminal defendant has a constitutional right to cross-examine a victim in connection with the victim's restitution claim when the amount is contested; (3) whether a victim must testify at a restitution hearing and the significance of a victim's refusal to do so; (4) what evidence must be presented to the superior court to prove a restitution claim; and (5) whether the evidence offered in this case was

sufficient to satisfy the State's burden. We also invited interested parties or organizations to submit *amicus* briefs on these issues.[2]

## DISCUSSION

**¶21**　　We review the superior court's denial of post-conviction relief for an abuse of discretion, *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012), but review constitutional and statutory interpretation issues *de novo*, *State v. Nordstrom*, 230 Ariz. 110, 115, ¶ 17 (2012); *State v. Cope*, 241 Ariz. 323, 324, ¶ 5 (App. 2016).

**¶22**　　Arizona law requires a convicted defendant to "make restitution to the person who is the victim of the crime . . . in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). The superior court has an affirmative duty to determine a victim's economic loss and order restitution in that amount. *State v. Fancher*, 169 Ariz. 266, 268 (App. 1991). Because the "purpose of restitution is not to punish, but to make the victim whole," *id.*, courts must take care to "not compensate victims for more than their actual loss," *Town of Gilbert Prosecutor's Office v. Downie ex rel. County of Maricopa*, 218 Ariz. 466, 469, ¶ 13 (2008). To do otherwise "would upset the relationship among reparation, retribution, and rehabilitation, and blur the distinction between criminal restitution and recovery for ancillary damages protected by the civil jury trial." *Id.* at ¶ 14. The State has the burden to prove a restitution claim by a preponderance of the evidence. *State v. Lewis*, 222 Ariz. 321, 324, ¶ 7 (App. 2009).

## A.　The Superior Court Deprived Quijada of her Due-Process Right to Contest the Evidence Upon Which the Restitution Award Was Based.

**¶23**　　Quijada argues the superior court violated her due-process rights by issuing its restitution order without first allowing her to question the victim about her restitution statements. We agree.

**¶24**　　Restitution is part of the sentencing process, which is "not surrounded by the panoply of protections afforded a defendant at trial." *Fancher*, 169 Ariz. at 268. Nevertheless, due process requires that a defendant be allowed "the opportunity to contest the information on which

---

[2]　　We thank the Arizona Attorneys for Criminal Justice, Arizona Voice for Crime Victims, and the National Crime Victim Law Institute for their insightful briefs on the issues raised. The Arizona Attorney General did not accept the court's invitation to submit an *amicus* brief.

the restitution award is based, to present relevant evidence, and to be heard." *Id.* Accordingly, we have long held that the amount of a victim's economic loss should be determined "when the parties and the evidence are available and the defendant's obligations to society are being defined." *State v. Scroggins*, 168 Ariz. 8, 9 (App. 1991). We have also held that courts must, absent waiver by the defendant, either: (1) afford the defendant an opportunity, through a hearing or similarly adequate process, to contest the evidence on which the restitution award is based; or (2) "if the appropriate amount of the award was evident from the facts before the [court]," impose restitution in open court with the defendant present so that a challenge may be made at that time. *State v. Lewus*, 170 Ariz. 412, 414 (App. 1992); A.R.S. § 13-804(G) (court to hold a hearing if there is not "sufficient evidence to support a finding of the amount of restitution or the manner in which the restitution should be paid"); *see also State v. Steffy*, 173 Ariz. 90, 93 (App. 1992) (defendant waived right to a restitution hearing by "his explicit waiver at sentencing and by counsel's failure to object to the amount imposed").

**¶25**       Here, 18 months after the victim discovered the theft, she provided three unsworn restitution statements to the State, the latter two each alleging significantly larger amounts of economic loss than the last. *See supra*, ¶¶ 6–7. In her final restitution statement, the victim claimed $45,320.18 of financial loss, an increase of more than $39,000 from her first statement of $5530.75. Significantly, each of the three statements differed substantially from the oral and written statements the victim made just after discovering the theft. Not only did the victim claim many more items had been stolen than she initially reported, but she also changed the nature and quality of the items. She initially told the police that none of her missing jewelry contained real gemstones, yet in her final restitution statement, she claimed she lost tens of thousands of dollars' worth of authentic jewelry. Likewise, when police came to her home immediately after receiving the theft call in November 2012, the victim said the thieves had taken a "tennis bracelet" containing simulated diamonds, which was worth $300. In her final restitution statement, she asserted the stolen tennis bracelet held genuine diamonds and was worth $10,800. Moreover, according to the State, the Yuma County Sheriff's Office has custody of a tennis bracelet that Quijada's co-defendant pawned shortly after the theft. In a memorandum filed after the hearing on Quijada's petition for post-conviction relief, the State further noted that the victim carried a home insurance policy that would have covered the loss of a $10,800 bracelet, and questioned why, if the stolen bracelet contained actual diamonds, given that insurance coverage, the victim had failed to report the loss to her insurer.

¶26      The victim's uncorroborated personal research and appraisal of the value of many of the items she claimed had been stolen formed the sole basis for her final restitution statement. Thus, not only was the victim the only individual who could explain the discrepancies between the third restitution statement and her previous statements, she alone could substantiate the values of what she claimed was missing. The State, evidently aware of these facts, subpoenaed the victim to the first three scheduled restitution hearings, requested her presence at the scheduled October 2014 restitution hearing, and acknowledged that the "whole purpose" of holding a restitution hearing was to hear the victim testify. When the victim failed to appear at the October 2014 restitution hearing, however, the court expressed its inclination to determine restitution based upon her unsubstantiated statements alone. Over Quijada's oral and written objections, the court then took the matter under advisement and, as described above, issued an order rejecting Quijada's arguments and awarding restitution for $39,969.37.

¶27      Under these circumstances, the court deprived Quijada of due process. *See State v. Melendez*, 172 Ariz. 68, 71 (1992) ("The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness."). When the court chose to proceed without first providing Quijada an opportunity to question the victim, it effectively cut off the only avenue by which she could challenge the information on which the court would determine the amount of restitution. The due-process rights this court recognized in *Fancher* are not hollow; a defendant must be afforded a *meaningful* opportunity to contest the information upon which restitution is based, to present evidence, and to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))); *In re Kory L.*, 194 Ariz. 215, 219–20, ¶¶ 13–16 (App. 1999) (court denied mother of convicted juvenile the right to a "meaningful hearing" when it announced at the outset of hearing that, for vicarious restitution liability, mother was bound by juvenile's stipulation on restitution amount); *Lewus*, 170 Ariz. at 414 (court violated defendant's due-process rights by issuing restitution award before defendant could challenge the amount of restitution); A.R.S. § 13-804(G) (court to hold a hearing if there is not "sufficient evidence to support a finding of the amount of restitution or the manner in which the restitution should be paid"). Once the victim failed to appear for the October 2014 restitution hearing, the court deprived Quijada of any opportunity, meaningful or otherwise, to contest the victim's restitution claim.

**¶28** We are similarly unpersuaded that the post-conviction relief proceedings cured the court's failure to provide Quijada an opportunity to meaningfully contest the information upon which its restitution award was based. The court summarily dismissed Quijada's arguments concerning the procedural deficiencies of the restitution proceedings. Although the court held a hearing, at which the victim's ex-husband and a police officer testified, the court rebuffed the State's attempts to inform the court of its misgivings about the veracity of the victim's restitution statements. Having exhausted their means of persuading the victim to come forward voluntarily, the parties asked the court to compel the victim to testify, but the court denied the request. And although Quijada was able to present limited evidence and argument calling the veracity of the victim's restitution statements into question, the court characterized those efforts as a request for the court to "reweigh evidence," refused to consider it, and then increased its restitution award. In sum, the post-conviction relief proceedings did nothing to remedy the deprivation of Quijada's due-process rights during the restitution proceedings.

**¶29** We do not hold today that defendants have an unconditional due-process right to question any victim who submits evidence or statements to support a restitution claim. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands . . . ." *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017) (alteration in original) (quoting *Mathews*, 424 U.S. at 334). Moreover, victims have a right under the Arizona Constitution "to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1). A defendant's due-process protections must not be converted into tools to subject victims to unnecessary and potentially injurious court proceedings. But where events or circumstances call the veracity or accuracy of evidence concerning restitution into doubt, and the defendant cannot adequately challenge that evidence without questioning the victim in open court under oath, due process requires that the defendant be given the opportunity to do so. *See State ex rel. Romley v. Hutt*, 195 Ariz. 256, 259, ¶ 7 (App. 1999) ("[I]n some cases some victims' rights may be required to give way to a defendant's federal constitutional rights.").

**B.** **The Victims' Bill of Rights Does Not Prevent Quijada from Subpoenaing the Victim to Testify Concerning her Restitution Claim on Remand.**

**¶30** Given the superior court's refusal to allow the parties to subpoena the victim to the post-conviction relief hearing, we find it necessary to address whether, on remand, the victim may be subpoenaed to a restitution hearing if she refuses to appear voluntarily. To answer this

question, we must determine whether the rights and protections afforded to victims of crimes by the Victims' Bill of Rights, the Victims' Rights Implementation Act ("the Act"), A.R.S. §§ 13-4401 to -4442, and Arizona Rule of Criminal Procedure 39 allow a victim to refuse to appear and testify at a restitution hearing.

¶31        In *State ex rel. Dean v. City Court of Tucson*, 173 Ariz. 515 (App. 1992), this court addressed whether the subpoena of an alleged victim to a pretrial probable cause hearing violated the Victims' Bill of Rights and its related statutes. The court found "nothing in the [Victims' Bill of Rights or in the Act], either express or implied," authorized a victim "to refuse to appear or testify at pretrial hearings." *Id.* at 516. The court in *Dean* concluded that "[w]hile the Victims' Bill of Rights [and the Act] offer[] crime victims many protections," including the right to refuse discovery requests, Ariz. Const. art. 2, § 2.1(A)(5), and the right to refuse to testify about specific subjects, A.R.S. § 13-4434(A), "[victims] are not insulated from being required to appear and testify at court proceedings such as [a] probable cause hearing," *Dean*, 173 Ariz. at 517.

¶32        Four years later, in *A.H. by Weiss v. Superior Court*, 184 Ariz. 627 (App. 1996), this court considered whether the reasoning in *Dean* also applied to presentence proceedings. In that case, after the defendant subpoenaed a victim to testify at a mitigation hearing, the victim moved to quash the subpoena, arguing the Victims' Bill of Rights and its related statutes allowed victims to refuse to testify. *Id.* at 629. The superior court denied the motion, and the victim petitioned this court for special action review. *Id.* This court accepted jurisdiction and held that "[a]lthough the holding in *Dean* deals with pretrial hearings, its reasoning applies to all court proceedings." *Id.* at 630. Consistent with that understanding, the court held that "a victim does not have a categorical right to refuse to appear and testify at presentence proceedings." *Id.* The court also held that a victim's constitutional, statutory, and procedural rights do not conflict with a defendant's constitutional right to "compel the attendance of witnesses in his defense" at sentencing so long as the testimony sought is: (1) not "of the type which could be used to locate [the victim] and is not prohibited by the statutes"; and (2) is "clearly relevant and may be important to the sentencing outcome." *Id.* at 629–30.

¶33        We see no reason to depart from *Dean* and *Weiss* when the proceeding at issue is a restitution hearing. A defendant's constitutional right to "compel the attendance of witnesses in his defense . . . extends to a defendant's sentencing hearing." *Weiss*, 184 Ariz. at 629 (citing *State v. Ramirez*, 178 Ariz. 116, 128 (1994)). A restitution hearing, like a mitigation hearing, is part of the sentencing process. *Fancher*, 169 Ariz. at 268. As for

the State, it has a statutory right to subpoena any witness "to appear before the court in which the complaint, indictment or information is to be heard or tried." A.R.S. § 13-4071(B)(2); *see also Gershon v. Broomfield*, 131 Ariz. 507, 508 (1982). Furthermore, we find nothing in the Victims' Bill of Rights, the current versions of its related statutes and rules, or subsequent caselaw that might give us pause in applying *Dean* and *Weiss* to restitution proceedings. *But cf. State v. Wein*, 242 Ariz. 372, 375, ¶ 10 (App. 2017) (victims' right to be heard without being subject to cross-examination under A.R.S. § 13-4426.01 afforded victims the right to submit victim impact statements during pretrial bond-eligibility hearing without being forced to undergo cross-examination); *Mendez v. Robertson*, 202 Ariz. 128, 130, ¶ 8 (App. 2002) (because defendant requesting reexamination of pretrial release conditions was not entitled to an evidentiary hearing, defendant did not have right to compel the victim to testify and be subject to cross-examination). We, therefore, agree that *Dean*'s reasoning "applies to all court proceedings," *Weiss*, 184 Ariz. at 630, and hold victims do not have an unconditional right to refuse to appear and testify at restitution proceedings.

¶34　　　As we have said, however, *supra* ¶ 29, a defendant does not have an unconditional right to compel a victim to testify at a restitution hearing. *See Weiss*, 184 Ariz. at 630. Nothing in our decision should be read to undermine the "considerable discretion" the superior court maintains in *every* court proceeding to "determin[e] the relevancy and admissibility of evidence." *State v. Hensley*, 142 Ariz. 598, 602 (1984). Should the court determine that the testimony sought is irrelevant, *Weiss*, 184 Ariz. at 630, or in violation of the victim's constitutional rights, Ariz. Const. art. 2, § 2.1(A)(1), (A)(5), or statutory protections, A.R.S. § 13-4434(A), the court may quash the subpoena. At the victim's request, the State may seek to quash the subpoena on the victim's behalf. A.R.S. § 13-4437(C) ("At the request of the victim, the prosecutor may assert any right to which the victim is entitled."). We merely hold that when a victim's testimony is necessary to effectuate a defendant's due-process rights and to ensure the restitution amount does not create a "'windfall' to the victim," *Steffy*, 173 Ariz. at 94, a victim may be compelled to appear and testify. Accordingly, should Quijada or the State be unable to persuade the victim to testify voluntarily, the parties may, on remand, subpoena the victim to appear at the restitution hearing.

C.　　**If a Victim Does Not Comply with a Subpoena, the Superior Court May Act to Remedy the Resulting Impairment of a Defendant's Due-Process Rights.**

¶35　　　Although due process requires Quijada be given the opportunity to question the victim, and she may subpoena the victim to

14

effectuate that right, we acknowledge the possibility that the victim nevertheless may fail to appear and testify. As noted above, at the October 2014 restitution proceeding, the State indicated that the victim was no longer willing or possibly unable to testify. Since that proceeding, the State has persistently had difficulty locating and communicating with the victim. Moreover, before communication with the victim ceased, she indicated to the State that she refused to attend any hearing to modify the amount of restitution the court previously ordered. Thus, it is unclear on remand whether either party will be able to serve the victim with a subpoena or whether the victim would comply if the subpoena is served. Given the superior court's obligation to promptly determine and order restitution to victims of crimes, *Town of Gilbert Prosecutor's Office*, 218 Ariz. at 468, ¶ 7, we must consider how the court may remedy the denial of Quijada's due-process rights if she is unable to examine the victim on remand.

**¶36**		Quijada does not suggest that if the victim fails to appear in response to a subpoena she should be cited for contempt, and nothing in this opinion should be understood to endorse that outcome. For two reasons, we firmly reject any notion that a victim who disobeys a subpoena to appear and testify at a restitution hearing may be arrested and held in contempt under A.R.S. § 13-4073(A). First, victims have a constitutional right "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1). Subjecting a victim to the threat of arrest and punishment for failing to appear at a restitution hearing presents far too great a risk of transforming a defendant's due-process rights into a weapon for harassment and abuse. Second, because restitution "is not a criminal punishment," *State v. Reese*, 124 Ariz. 212, 215 (App. 1979), and is "bound by different rules than the adjudication of guilt," *Fancher*, 169 Ariz. at 268, the remedies necessary to cure a deprivation of due process during restitution proceedings need not be as severe as those that may be required at trial.

**¶37**		The superior court may remedy the deprivation of due process caused by the victim's failure to appear and testify by taking that fact into account when deciding whether the State has met its burden of proving the restitution claim. At a minimum, once the court finds the victim's refusal to testify unjustified, the court should draw an adverse inference against any uncorroborated statements made by the victim concerning her economic loss. "Where the existence or nonexistence of a certain fact is within the peculiar knowledge of a witness, and he fails to testify as to the fact, the trier of fact may justly draw the inference that the true fact is against his interest." *Starkweather v. Conner*, 44 Ariz. 369, 377

(1934); *see also Patania v. Silverstone*, 3 Ariz. App. 424, 428–29 (1966) (adverse inference improper for failure to call a witness where damages caused by amputated fingertip "were susceptible of proof without expert medical testimony"); *Ponce v. Indus. Comm'n*, 120 Ariz. 134, 136 (App. 1978) (discussing different states' approaches to drawing adverse inferences from a witness's failure to testify).[3] The Supreme Court has long recognized that "[s]ilence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923). "[A]side from the privilege against compelled self-incrimination, the Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (citing past decisions of the Court for this principle).

¶38 The weight a court should ascribe to this adverse inference will, of course, turn on the totality of the circumstances, including evidence showing why the victim failed to appear, and, as here, the nature of the information the victim has previously provided in support of a claim for restitution. It will also inevitably turn on the State's ability to prove the restitution claim with evidence from other sources. *See Scroggins*, 168 Ariz. at 9 ("A court has discretion to set the amount of restitution according to the facts."). But the court must not turn a blind eye when a victim's failure to testify undermines the defendant's ability to both contest the information upon which restitution is based and present evidence. Requiring the court to at a minimum draw an adverse inference from the victim's absence ensures proper consideration of the effect of the victim's silence on the

---

[3] Although Arizona courts have typically discussed drawing adverse inferences from a witness's failure to testify in a civil context, other states have explicitly recognized their propriety in criminal cases. *People v. Lopez*, 84 Cal. Rptr. 2d 655, 657 (App. 1999) ("But where a witness has no constitutional or statutory right to refuse to testify, a different analysis applies. Jurors are *entitled* to draw a negative inference when such a witness refuses to provide relevant testimony."); *State v. Malave*, 737 A.2d 442, 452 (Conn. 1999) (parties may comment on the absence of witnesses so long as the parties do not explicitly "exhort the jury to draw an adverse inference" from their absence); *State v. Tahair*, 772 A.2d 1079, 1082–86 (Vt. 2001) ("missing witness instruction" should no longer be given in criminal cases, but no restriction on trier of fact's ability to "naturally" infer that an absent witness's testimony would have been unfavorable).

State's ability to prove the restitution claim and the defendant's ability to challenge it.

¶39        Drawing an adverse inference is not the only remedy the court may employ when a victim refuses to comply with a subpoena to testify at a restitution hearing. Our decision today merely sets the floor, not the ceiling, for what may be necessary to cure the denial of due process caused by that act. In the exercise of its discretion, the superior court may craft stronger or more particularized remedies, up to even striking the absent victim's restitution claim entirely. But in assessing the proper remedy, the court must always carefully balance the victim's constitutional right to restitution against the defendant's constitutional right to due process.

**D.      The Superior Court Did Not Err by Finding the Expenses Associated with the Home Security System Directly Flowed from the Lost Equanimity Caused by Quijada's Criminal Conduct.**

¶40        Finally, Quijada argues the expenses the victim incurred to install and maintain a home security system do not constitute "economic loss" for purposes of restitution. Because this issue raises a novel question of law and may arise again on remand, we address it now. *See Buckholtz v. Buckholtz*, 808 Ariz. Adv. Rep. 6, 10, ¶ 17 (App. Jan. 15, 2019).

¶41        Under A.R.S. § 13-603(C), a court is required to order restitution to victims of crimes "in the full amount of the economic loss as determined by the court." In making this determination, the court must consider "all losses caused by the criminal offense or offenses for which the defendant has been convicted." A.R.S. § 13-804(B). Economic loss is defined as "any loss incurred by a person as a result of the commission of an offense," including "lost interest, lost earnings and other losses that would not have been incurred but for the offense." A.R.S. § 13-105(16). But the economic loss does not include "damages for pain and suffering, punitive damages or consequential damages." *Id.*

¶42        Our supreme court's discussion of the losses for which restitution should be ordered in *State v. Wilkinson*, 202 Ariz. 27 (2002), guides our inquiry here. In *Wilkinson*, the court held that to qualify for restitution, the loss claimed must: (1) "be economic"; (2) "be one that the victim would not have incurred but for the defendant's criminal offense"; and (3) "flow directly from the defendant's criminal conduct, without the intervention of additional causative factors." *Id.* at 29, ¶ 7. This court has since interpreted the *Wilkinson* test as creating a modified but-for standard for establishing causation on restitution claims. The State must prove "that

a particular loss would not have occurred but for the conduct underlying the offense of conviction, [and] that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Lewis*, 222 Ariz. at 325, ¶ 11 (alteration in original) (quoting *State v. Guilliams*, 208 Ariz. 48, 53, ¶ 18 (App. 2004)). "The key to the analysis is reasonableness, which is determined on a case by case basis." *State v. Linares*, 241 Ariz. 416, 419, ¶ 10 (App. 2017) (citing *Guilliams*, 208 Ariz. at 53, ¶ 18).

¶43        *Wilkinson* and its progeny also reflect the long-understood notion that Arizona permits restitution "for a wide variety of expenses," so long as those expenses flow directly from the defendant's criminal conduct. *State v. Baltzell*, 175 Ariz. 437, 439 (App. 1992). In *State v. Wideman*, for example, this court held that to impose restitution, expenses for mental-health counseling for a murdered victim's immediate family were "directly attributable to the victim's death." 165 Ariz. 364, 369 (App. 1990). And in *State v. Brady*, where a victim was sexually assaulted in her apartment, the court held that "moving expenses incurred in an effort to restore the victim's equanimity" were directly attributable to the defendant's criminal conduct. 169 Ariz. 447, 448 (App. 1991).

¶44        With this framework in mind, we conclude the expenses associated with installing a home security system may be recoverable as restitution if they were incurred "in an effort to restore the victim's equanimity" following the criminal offense. *See Brady*, 169 Ariz. at 448. We see no legal principle on which we could categorically distinguish the costs of installing a home security system from, for example, the costs of mental-health counseling, *Wideman*, 165 Ariz. at 369, or moving expenses, *Brady*, 169 Ariz. at 448. But the propriety of ordering restitution for the costs of *maintaining* a home security system—such as payment of a monthly service fee—requires closer scrutiny.

¶45        We perceive a difference between costs "directly resulting from" efforts to restore one's equanimity and the "attenuated costs" of preserving that equanimity once it has been restored. *See Guilliams*, 208 Ariz. at 55, ¶ 23 (reversing, as attenuated temporally from criminal conduct, the parts of a restitution award that included costs of efforts to investigate and apprehend an escaped prisoner). A defendant may not be held responsible for the costs of maintaining a home security system beyond a reasonable period necessary to restore the victim's equanimity. The dividing line between costs incurred to restore equanimity and costs incurred to maintain equanimity will often be indistinct; it will not always be an easy task to pinpoint the moment at which a victim's sense of security is restored. *See id.* at 55, ¶ 25. "But a 'reasonableness' standard for attenuated causation is well-suited to guide any such line drawing, and, as

with any such discretionary decision entrusted to the trial court, our review will be deferential." *Id.*

¶46        In this case, in its restitution order the court ordered Quijada to pay: (1) $1278.89 for the installation of a home security system; (2) $108.31 for the security system's activation fee; and (3) $719.89 for 16 months of the security system's monthly service fee. After the post-conviction relief proceedings, the court altered its original award only to impose restitution for 12 months of the monthly payments, totaling $539.88. To support awarding restitution for these expenses, the court referenced the victim's December 2012 letter, which "shows her feeling vulnerable due to a co-defendant asking about a picture of victim and victim's husband being overseas."

¶47        Given the deference afforded to the superior court, we conclude the evidence supports imposing restitution for the expenses the victim incurred to install the home security system and the fees she paid to maintain it for 12 months following the theft. The evidence shows that the victim's purchase of the security system directly flowed from the loss of equanimity caused by Quijada's and the co-defendant's criminal conduct. In the December 2012 letter, the victim noted that she felt vulnerable and victimized following the burglaries and that her fears increased after learning the co-defendant had searched for a photograph of her while stealing from her home. For the same reasons, the order to pay one year of maintenance fees also appears reasonable.

## CONCLUSION

¶48        For the foregoing reasons, we grant the petition for review and grant relief in part.[4] We vacate the superior court's restitution award of $40,885.42 and remand for proceedings consistent with this opinion.

---

[4]        Quijada raised other arguments in her petition and supplemental briefing, including: (1) that the court should have reduced the restitution award for items recovered by the police; and (2) that the court should have reduced the restitution award in recognition of her limited involvement in the crimes. Because our decision with respect to the denial of due process in this case requires vacating and remanding the restitution award, and because we believe these arguments may be properly raised on remand, we decline to address them here. *State v. Simmons*, 238 Ariz. 503, 506, ¶ 10, n.6 (App. 2015).

**W E I N Z W E I G,** Judge, specially concurring:

¶49         I concur with the majority opinion. Restitution has a restorative purpose and function in our criminal justice system—to make crime victims whole and deprive convicted criminals of their tainted, ill-gotten fruits. Restitution is not a mechanism to generate undue profits and our courts must ensure it is not deployed to secure gratuitous windfalls. I write separately, however, to stress a few points.

¶50         First, our decision does not raise the minimum evidentiary burden for the government to secure a victim's "important constitutional right" to prompt restitution, which remains proof by a preponderance of the evidence. *State v. Wilkinson*, 202 Ariz. 27, 28, ¶ 6 (2002); *supra* ¶ 22. The government has often and will often meet this burden without any need for the victim to provide live, in-court testimony. But where, like here, the "events or circumstances call the veracity or accuracy of evidence concerning restitution into doubt," a crime victim must account for her evolving, irreconcilable restitution claim and the rapid, seven-fold increase in restated losses. *Supra* ¶ 29.

¶51         Second, we must remain mindful of a victim's emotional plight. Victims are naturally fearful and reluctant to confront a perpetrator. Indeed, our decision recognizes this reality, affirming an award of expenses to install and maintain an alarm system to restore the victim's equanimity. *Supra* ¶ 47. Given this dynamic, I am concerned that victims might forgo their constitutional right to restitution if it requires their in-court testimony. A victim's decision to seek restitution turns on a cost-benefit assessment and courts should be careful not to disrupt the calculus with unnecessary and onerous prerequisites. To that end, courts should understand and appreciate the menu of options available to gain corroboration of tenuous restitution claims, including sworn statements and written witness examinations.

¶52         Third, I would note that victims of home theft will often not immediately appreciate the universe of stolen items, but will instead discover that additional items are missing as time passes. Thus, when first interviewed by law enforcement, victims should not be expected to catalogue all stolen items with clinical precision.

¶53         Last, I am not convinced that a negative inference is required to deal with victims who refuse to cooperate in the restitution process. Courts need only consider in any particular case whether the government has met its burden of proof for a restitution claim. When corroboration is missing and a victim refuses to testify, the court can and should account for

the evidentiary void in the normal course. An express admonishment is unnecessary, however, and we need not scold a reticent victim who never sought to attain or achieve victim status. Criminal victims are not civil litigants. I concur with the opinion, however, because it limits the negative inference option to instances where the court has determined "the victim's refusal to testify [is] unjustified." *Supra* ¶ 37.



AMY M. WOOD • Clerk of the Court
FILED:   AA