NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DRAVON ELIJAH AMES, *Appellant.*

No. 1 CA-CR 24-0042

FILED 05-20-2025

Appeal from the Superior Court in Maricopa County
No. CR2018-153268-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory
*Counsel for Appellee*

Slaton Roebuck, PLLC, Scottsdale
By Sandra L. Slaton
*Co-Counsel for Appellant*

Law Offices of Robert J. McWhirter, Phoenix
By Robert J. McWhirter
*Co-Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

_____

**P A T O N**, Judge:

¶1　　　　Dravon Ames appeals the superior court's restitution order following his discharge from probation.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　Ames pled guilty to an amended charge of resisting arrest, a class 6, non-dangerous undesignated felony in September 2021.  As a condition of his plea agreement, Ames agreed "to pay full restitution to all victims for all economic losses" resulting from the underlying offense.  Consistent with the terms of the plea agreement, Ames's sentence was suspended and he was placed on supervised probation for 18 months beginning June 8, 2022, and was ordered "[t]o pay restitution for all economic loss to all victims."

¶3　　　　In April 2023, the adult probation office filed a petition for early termination of Ames's probation, also noting that "[a] Criminal Restitution Order is being submitted to address any monies outstanding." The State asked the court to delay terminating Ames's probation until after a restitution hearing could be completed.  In a separate filing on the same date, the State asked the court schedule a restitution hearing for May 2023.

¶4　　　　A month later, on May 16, 2023, the superior court issued an order setting the restitution hearing for August 11, 2023.  The next day, the court issued two additional orders.  One order stated "that the State of Arizona is entitled to a Criminal Restitution Order against the Defendant for the unpaid balance" with interest, effective May 31, 2023.  The other order discharged Ames from probation and noted that "[a] Criminal Restitution Order is being submitted to address any monies outstanding."

¶5　　　　Ames moved to dismiss and vacate the scheduled restitution hearing, which the superior court denied.  The superior court continued the restitution hearing until September 2023.  After the superior court denied his motion to stay the hearing, Ames unsuccessfully sought special action

relief with this court, then requested emergency relief in our supreme court, which was also denied.

**¶6**   The superior court held a restitution hearing in early November 2023 with Ames and the State, by stipulation, filing written closing arguments later that month. In December 2023, the superior court ordered Ames to pay $15,256 in restitution, with monthly payments of at least $100 starting March 1, 2024.

**¶7**   Ames timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(3).

## DISCUSSION

**¶8**   Ames challenges the restitution order on three grounds: (1) the State waived its right to request restitution by failing to meet its own requested deadline; (2) the superior court lacked jurisdiction to hold a hearing or order restitution after Ames was discharged from probation; and (3) the State could not prove causation or economic loss at the restitution hearing, which precluded any restitution award to the victim.

**I.**  **The superior court did not impose a deadline for the State to request restitution.**

**¶9**   Ames contends the State waived its right to restitution because it did not request a restitution hearing until four months after the deadline the court imposed at sentencing. But the court did not impose a deadline for the State to seek restitution. At sentencing, the State asked the court for "at least a period of six months" to file its restitution claim, to which the court replied, "okay." The State therefore did not waive the right to restitution because it did not violate any court-imposed deadline for seeking restitution.

**II.**  **The superior court had jurisdiction to hold a restitution hearing and order restitution after discharging Ames from probation.**

**¶10**   Ames argues that once the superior court discharged him from probation, it no longer had jurisdiction over his case, and therefore lacked authority to subsequently hold a restitution hearing or award restitution. He claims Section 13-805(A)(1) limits a superior court's post-sentence jurisdiction only to ordering, modifying, or enforcing the manner in which restitution payments are made. The State responds that the

superior court retained jurisdiction to order restitution after Ames's discharge from probation under Section 13-603(C).

¶11 Whether a superior court has jurisdiction over a restitution claim "presents a pure question of law." *State v. Zaputil*, 220 Ariz. 425, 427, ¶ 7 (App. 2008). "Thus, we review the [superior] court's ruling de novo." *Id.* To construe statutes, "we apply fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7 (2007) (citation omitted).

¶12 Crime victims in Arizona have a constitutional right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8). To effectuate this right, "the [superior] court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim . . . in the full amount of the economic loss as determined by the court and in the manner as determined by the court or the court's designee pursuant to chapter 8 of this title." A.R.S. § 13-603(C). In determining the "full amount" of the victim's loss, "the court shall consider all losses caused by the criminal offense," irrespective of the defendant's ability to pay. A.R.S. § 13-804(B), (C).

¶13 Section 13-603 provides that the court is both required to and has the authority to *award* restitution for the "full amount" of a victim's losses, but does not speak to "*when* restitution *must* be assessed." *State v. Grijalva*, 242 Ariz. 72, 74, ¶ 9 (App. 2017) (emphasis added) (citation omitted). We have interpreted this to mean that restitution may be ordered at a time after sentencing. *See, e.g., Grijalva*, 242 Ariz. at 74-75, ¶¶ 11-15 (upholding restitution where it was requested eighteen months after sentencing); *State v. Cervantes*, 1 CA-CR 18-0224, 2019 WL 3424978 (Ariz. App. July 30, 2019) (mem. decision) (affirming when the superior court retained jurisdiction to order restitution three years after the defendant was sentenced).

¶14 Conversely, Section 13-805(A) regulates only "*the manner* in which court-ordered payments are made," extending a court's jurisdiction to order, modify, and enforce payments until restitution has been paid in full or "until the defendant's sentence expires." A.R.S. § 13-805(A) (emphasis added). Section 13-804(B) supports the conclusion that Section 13-603(C) gives the court authority to award restitution whereas Section 13-805 only regulates the manner in which court-ordered payments are made.

*See* A.R.S. § 13-804(B) ("In ordering restitution for economic loss pursuant to section 13-603 . . . the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted.").

**¶15**       Section 13-603(C) requires the court to order restitution "in the full amount of the economic loss as determined by the court."  And in Section 13-805(C), the legislature gave the court continuing jurisdiction over the payment of restitution until a defendant has: (1) satisfied the debt, (2) completed his incarceration or probation, or (3) absconded from supervision entirely.  Read together, these statutes ensure that the court has the authority to protect and enforce a victim's constitutional right to restitution.

**¶16**       Under Section 13-805, the superior court had jurisdiction to address restitution before Ames was released from probation, and the court exercised that jurisdiction to schedule a restitution hearing.  Ames was on notice that the restitution issue remained pending—the restitution hearing date was set before the court discharged him from probation.  Thus, under the facts of this case, where the State requested restitution and a hearing, and the superior court scheduled a restitution hearing before discharging Ames, the court did not err by proceeding with the restitution hearing and awarding restitution.  *See Zaputil*, 220 Ariz. at 429, ¶ 16 (concluding that because there was a timely claim for restitution, there was no basis for the superior court not to order restitution in compliance with Section 13-603(C)).

**¶17**       Ames contends that the legislature's 2013 amendment to Section 13-805 limits the superior court's jurisdiction such that the court was divested of jurisdiction once Ames was discharged from probation.  Not so.  Under the current and prior versions of Section 13-805(A), the superior court retains jurisdiction until *both* court-ordered payments are made *and* a defendant completes his sentence.  *Bartlett v. Cohen*, 1 CA-SA 24-0106, 2024 WL 5135509, *3, ¶ 17 (Ariz. App. Dec. 17, 2024) (mem. decision); *State v. Pinto*, 179 Ariz. 593, 596 (App. 1994) (holding that the superior court "retains jurisdiction to modify the manner in which court-ordered payments are made until such time that the amount has been paid in full, or defendant's sentence expires, *whichever occurs last*[]") (emphasis altered).  Here, although Ames had completed his sentence, he had not yet fulfilled his obligation to pay restitution, which was still being determined.  Thus, the superior court retained jurisdiction to order restitution.

**III. The superior court did not err by finding the State met its burden of proving Ames's criminal activity was the cause of the victim's injury resulting in economic loss.**

¶18        Ames contends the superior court improperly awarded restitution because the State failed to prove his criminal activity was the but-for and direct cause of the victim's injury and economic loss resulted from it.  Restitution amounts must be proven by a preponderance of the evidence.  *See State v. Quijada*, 246 Ariz. 356, 364, ¶ 22 (App. 2019) (noting "[t]he State has the burden to prove a restitution claim by a preponderance of the evidence").  We view the evidence in the light most favorable to sustaining the superior court's restitution order and we review that order for an abuse of discretion.  *State v. Stutler*, 243 Ariz. 128, 130, ¶ 4 (App. 2017).

¶19        To be recoverable as restitution, a loss must be (1) economic, (2) one that the victim would not have incurred but for the criminal conduct, and (3) directly caused by the criminal conduct.  *State v. Leal*, 248 Ariz. 1, 4, ¶ 12 (App. 2019).  A victim may recover any economic loss directly caused by a defendant's criminal conduct but may not recover consequential damages.  *Id.*  "Economic Loss includes lost interest, lost earnings and other losses that would not have been incurred but for the offense."  A.R.S. § 13-105(16).  "If a victim has received reimbursement for the victim's economic loss from an insurance company, a crime victim compensation program funded pursuant to § 41-2407 *or any other entity*, the court shall order the defendant to pay the restitution to that entity."  A.R.S. § 13-804(E) (emphasis added).

¶20        Here, the State proved by a preponderance of the evidence that the requested restitution directly flowed from Ames's act of resisting arrest.  At the restitution hearing, the State presented several exhibits and testimony regarding the cause of the victim's injury.  The victim testified that he sustained an injury during his altercation with Ames, he did not have an injury prior to the confrontation with Ames, and that immediately after the altercation he "had no direct conscious control over [his left thumb]."  The victim's expenses involved surgery to repair a torn ligament and roughly three months of rehabilitation.  Given this evidence, the court did not abuse its discretion by finding that the State met its burden of proving by a preponderance of the evidence that the medical expenses were a direct result of Ames's crime.

¶21        Ames also argues that the victim did not suffer an economic loss because the victim "did not incur any personal expenses for medical treatment related to his thumb injury because the victim's employer, the

City of Tempe, paid for his surgery and rehabilitation through its workers' compensation administrator. He contends that the City of Tempe cannot be compensated because it "does not qualify as a 'victim' under the definition provided in Section 13-4401." But the City of Tempe "stands in the shoes of the victim [and] it is legally required to suffer the victim's own precise loss." *State v. Prieto*, 172 Ariz. 298, 299 (App. 1992); *see Leal*, 248 Ariz. at 4-5, ¶ 14 (affirming a superior court's restitution order to a tribe who paid the victim's funeral expenses). Further, by signing his plea agreement, Ames agreed to pay "full restitution" incurred by any "insurance company and/or the MCAO Victim Compensation Bureau." Even though the City of Tempe's workers' compensation carrier paid for the victim's medical expenses, we cannot say the victim did not suffer an economic loss. Because the workers' compensation carrier paid for the victim's injuries on the City of Tempe's behalf, the City of Tempe is entitled to restitution.

**¶22** Because the victim suffered an economic loss that was directly caused by Ames's criminal conduct, the superior court did not err by ordering Ames to pay restitution.

**¶23** Ames also claims on appeal that interpreting Section 13-805 to allow courts to hold a hearing and order restitution after a party is discharged from probation would constitute a violation of the *ex post facto* provisions of both Article I, Section 10, Clause 1 of the United States Constitution and Article 2, Section 25, of the Arizona Constitution. Ames, however, does not explain how this interpretation of Section 13-805 amounts to an *ex post facto* violation and only cites to one case, without explanation, to support his claim. Ames has thus abandoned and waived his *ex post facto* claim because he failed to develop it. *State v. Vargas*, 249 Ariz. 186, 190, ¶ 13 (2020) (citing *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.")).

## CONCLUSION

**¶24**      We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR